**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VINCENT LEUNG, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>XPO LOGISTICS, INC.,<br>                Defendant. | No. 15 CV 03877<br><br>Judge Edmond E. Chang |

**<u>VINCENT LEUNG'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM</u>**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION ................................................................................. 1

II.      STATEMENT OF THE FACTS ....................................................... 2

     A.      Procedural Background .................................................................. 2

     B.      Discovery ....................................................................................... 3

     C.      The Parties' Mediation .................................................................. 3

     D.      The Proposed Settlement ............................................................... 4

         1.      The Settlement Class ............................................................ 4

         2.      Monetary Relief for Settlement Class Members ........................... 4

         3.      *Cy Pres* Distributions .......................................................... 5

         4.      Class Release ....................................................................... 6

         5.      Class Representative Service Award ........................................... 6

         6.      Attorneys' Fees and Costs ....................................................... 6

         7.      Administration and Notice ........................................................ 7

III.      ARGUMENT ....................................................................................... 8

     A.      The Settlement Approval Process ................................................. 8

     B.      The Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion ..................................................... 11

     C.      The Settlement is Within the "Range of Reasonableness" for Preliminary Approval ................................................................... 12

         1.      The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits ........................................................ 13

             a.      The Monetary Amount offered in Settlement ................. 13

             b.      The Strength of Plaintiff's Case ..................................... 15

         2.      Continued Litigation is Likely to be Complex, Lengthy, and Expensive .......................................................................... 16

         3.      There is Currently No Opposition to the Settlement ................... 17

         4.      Class Counsel Strongly Endorse the Settlement ......................... 17

         5.      The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval ................................. 18

     D.      Provisional Certification of the Settlement Class is Appropriate ........... 18

         1.      The Rule 23(a) Requirements are Satisfied ................................ 19

         2.      The Rule 23(b)(3) Requirements are Satisfied ........................... 20

i

E. The Proposed Notice Program Is Constitutionally Sound ....................... 21

IV. CONCLUSION ................................................................................................ 22

CERTIFICATE OF SERVICE ................................. **ERROR! BOOKMARK NOT DEFINED.**

**Cases**

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
(N.D. Ill. May 5, 2011) ........................................................................ 18

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.,*
No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
(N.D. Ill. July 26, 2011) ................................................................. 11, 12

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ........................................................................... 23

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ........................................... 10, 11, 12, 15

*Boggess v. Hogan,*
410 F. Supp. 433, 438 (N.D. Ill. 1975) ............................................... 10

*Chapman v. First Index, Inc.,*
No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556
(N.D. Ill. March 4, 2014) ..................................................................... 17

*Connor v. JPMorgan American Express Bank, N.A.,*
No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) ......................... 16

*Felzen v. Andreas,*
134 F.3d 873 (7th Cir. 1998) .............................................................. 10

*G.M. Sign, Inc. v. Brinks Manufacturing Co.,*
No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084
(N.D. Ill. March 4, 2014) ..................................................................... 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869
(N.D. Ill. Aug. 20, 2009) ..................................................................... 22

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010) .......................................................... 14

*In re Mexico Money Transfer Litig.,*
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................ 20

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ........................................................ 10, 12

*Kessler v. Am. Resorts International's Holiday Network, Ltd.,*
Nos. 05 C 5944 & 07 C 2439,
2007 U.S. Dist. LEXIS 84450
(N.D. Ill. Nov. 14, 2007) ..................................................................... 12

*Kramer v. Autobytel,*
No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
(N.D. Cal. Jan. 27, 2012) .................................................................... 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
(S.D. Cal. Feb. 5, 2013) ........................................................................... 15

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*,
834 F. 2d 677, 684 (7th Cir. 1987) ............................................................ 13

*McCabe v. Crawford & Co.*,
210 F.R.D. 631 (N.D. Ill. 2002) ................................................................ 22

*McKinnie v. JP Morgan American Express Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) ...................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................................... 24

*Murray v. New Cingular Wireless Servs.*,
232 F.R.D. 295 (N.D. Ill. 2005) ................................................................ 23

*Parker v. Risk Mgmt. Alternatives, Inc.*,
206 F.R.D. 211 (N.D. Ill. 2002) ................................................................ 22

*Phillips Randolph Enters., LLC v. Rice Fields*,
No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
(N.D. Ill. Jan. 11, 2007) ............................................................................ 18

*Redman v. Radioshack Corp.*,
No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880
(N.D. Ill. Feb. 7, 2014) ............................................................................. 12

*Sadowski v. Med1 Online, LLC*,
No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766
(N.D. Ill. May 27, 2008) ........................................................................... 23

*Savanna Group, Inc. v. Trynex, Inc.*,
No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277
(N.D. Ill. Jan. 4, 2013) ............................................................................. 17

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ 19

*Spokeo v Thomas Robbins*,
11-56843 (9th Cir. 2014) ........................................................................... 18

*Steinfeld v. Discover Fin. Svcs.*
12-cv-01118 (N.D. Cal.) ........................................................................... 16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .................................................................... 14

**Statutes**

Telephone Consumer Protection Act,
47 U.S.C. § 227(b)(1)(A) ............................................................................ 1

iv

**Treatises**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)................................. 9, 10, 11, 13

*Manual for Complex Litig.,*
    at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004)...................................... 10, 12, 21, 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Vincent Leung respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Leung ("Plaintiff" or "Leung") and Defendant XPO Logistics, Inc. ("XPO Logistics"). The proposed Settlement would resolve all claims in the above-entitled action. Plaintiff alleges that XPO Logistics violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by placing prerecorded survey calls to cellular telephones without the prior express consent of Plaintiff and the putative class members.

Under the Settlement XPO Logistics is required to pay $7,000,000 into a settlement fund ("Fund") for a class consisting of approximately 325,000 persons for whom XPO or its subsidiary placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery. Settlement Class Members who file valid claims will receive a pro rata cash payment from this Fund. Not a single penny of the Fund will revert back to XPO Logistics.

This action involves sharply opposing positions on many issues. For example, the parties disagreed whether there was consent for these calls. XPO Logistics' contended under applicable FCC guidance and governing case law, the context and purpose of XPO's calls fall within the boundaries of the scope of the customers' consent given for calls made in connection with the deliveries. E.g., *Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017); *Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) (holding that when plaintiff provided her phone number at the point of sale to effectuate a furniture delivery, she gave prior express consent to receive a pre-delivery call and a post-delivery survey call). Plaintiff contended that *Blow* supported his position as it held: "providing one's phone number does not constitute carte blanche consent to receive

automated marketing messages of any kind". *Id*. at *26-27. Thus, "the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554, *11 (N.D. Ill. 2014).

The parties also disagree as to whether a class can be certified. Despite these disagreements, the parties reached this settlement after several years of hard-fought litigation and several robust mediations.

With this motion, Plaintiff seeks preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Settlement Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law.

## II.   STATEMENT OF THE FACTS

### A.   Procedural Background

On May 1, 2015, Mr. Leung filed a Complaint in the United States District Court for the Northern District of Illinois alleging that XPO violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded survey calls to cell phones without the prior express consent of Leung or the putative class members.

On May 28, 2015, XPO Logistics moved to stay this action pending the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.). Dkt. 15. On August 12, 2015, after briefing, this Court denied the motion to stay pending *Spokeo* but invited XPO Logistics to file a motion to "dismiss for lack of subject matter jurisdiction directed to Leung's allegations of actual injury." Dkt. 27. On December 9, 2015 and after full briefing, this Court denied XPO's motion to dismiss.

After the first mediation resulted in an impasse, XPO moved to bifurcate discovery so that

2

it could move forward with summary judgment as to the consent issue. In doing so, it set forth its arguments on summary judgment in a 15 page memorandum with 35 pages of exhibits setting out the survey questions, its case law, and its theory of consent. Dkt. 52. On March 24, 2016, this Court denied XPO Logistic's motion to bifurcate. Dkt. 55.

### B.    **Discovery**

The Parties engaged in extensive discovery and conducted numerous status conferences with the focus on discovery. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. In addition, Plaintiff filed motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105 (Amazon), 123 (Lowes), and 125 (Home Depot).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsels. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims.[1]

### C.    **The Parties' Mediation**

The parties mediated before the Honorable Wayne Andersen ("Judge Andersen") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on March 16, 2016, and again on May 23, 2016. A third private mediation was held before the Honorable James Holderman ("Judge Holderman") of JAMS on June 23, 2017, as well as follow-up in person meetings and negotiations between Counsel and officers of XPO before reaching a resolution in principle on August 25, 2017. Prior to each mediation, the parties submitted detailed mediation briefs to the mediators setting

---

[1] *See* Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 2, ¶ 2.

forth their respective views on the strengths of their cases.[2]  At mediation, the parties discussed

their relative views of the law and the facts and potential relief for the proposed Class.[3]

Counsel exchanged counterproposals on key aspects of the Settlement.  At all times, the

settlement negotiations were highly adversarial, non-collusive, and at arm's length.[4]

### D.    The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties, a copy of

which is attached as Exhibit 1. (Agreement).  For purposes of preliminary approval, the following

summarizes the Agreement's terms:

### 1.    The  Settlement Class

The Settlement Class is defined as follows:

> The parties whose cellular telephone numbers are identified in the call data produced in this litigation bearing the litigation production numbers XPOLG024550 and XPOLG024553 where XPO or its subsidiary placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery.

 Agreement § 2.25.[5]  Based on Plaintiff's expert's analysis, the approximate class size is no more

than 325,000 person.  *Exhibit 2* Keogh Decl., ¶ 4.

### 2.    Monetary Relief for  Settlement Class Members

The Settlement requires XPO Logistics to create a non-reversionary Settlement Fund of

$7,000,000.  Agreement §2.30.  Out of this Fund, Settlement Class Members who file a valid claim

will receive a Settlement Award in the form of a cash payment.  *Id.* § 2.28.  The amount of each

---

[2] *Id.*

[3] *Id.*

[4] *Id.* ¶ 6-7.

[5] Excluded the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement.  *Id.*

4

Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id.* §§ 11. No amount of the Settlement Fund will revert to Defendant. *Id.* While it is not possible to predict the precise amount of each Award until all claims have been submitted, Class Counsel, based on their experience in similar TCPA class actions, estimate awards of $131.00 [6] assuming a ten percent claim rate after deductions for Court-approved attorneys' fees and costs, any Court-approved incentive award to the Plaintiff, and costs of notice and claims administration. Although ten percent may seem a high claim rate, Class Counsel believes it is realistic given the robust notice plan set out below. If on the other hand, the actual claim rate is closer to the average claim rate of 5%, each class member would receive $263.

Checks for Cash Awards will be valid for 120 days from the date of the check. *Id.* § 12.1. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who was not a person who failed to cash his or her initial Settlement Award check, such remaining monies will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* §12.2.

In order to exercise the right to obtain the relief outlined above, Settlement Class Members need only complete a simple, one-page claim form and provide it to the Claims Administrator via the Settlement Website, by mail or via the Toll-Free Settlement Hotline. *Id.* §10.2.

### 3. *Cy Pres* Distributions

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres* beneficiary. Subject to Court approval, the

---

[6] Cash Awards are capped at $500 per survey call.

5

parties have selected any such funds be sent to the National Consumer Law Center earmarked for working to safeguard the protections of the TCPA. *Id.* §12.3. The class notice will identify this organization.

### 4. Settlement Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims that "arise out of or relate in any way to the Released Parties' contact or attempt to contact Settlement Class Members by placing pre-recorded or auto-dialed calls to Class Plaintiff and the Settlement Class Members' cellular phones with a pre-recorded survey, to the fullest extent that those terms are used, defined or interpreted by the TCPA or any other similar statute, relevant regulatory or administrative promulgations and case law, including, but not limited to, claims under or for a violation of the TCPA and any other statutory or common law claim arising under the TCPA as relative to pre-recorded or auto-dialed calls placed to cellular telephones" *Id.* § 17.3.

### 5. Class Representative Service Award

The Settlement Agreement provides that Plaintiff may petition the Court for a service award. There is no clear sailing provision as to this request. The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement. *Id.* In light of the fact that Plaintiff has fully participated in this case including being deposed, Plaintiff will request an incentive award of $10,000.00. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6. Attorneys' Fees and Costs

Prior to the Final Approval hearing and prior to the objection deadline, Class Counsel will apply to the Court for an award of attorneys' fees and costs. *Id.* §6.1. As will be addressed in

6

Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately 33% plus reasonable expenses in common fund TCPA class settlements after settlement administration costs are deducted, particularly in cases involving a non-reversionary common fund of this size. This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id*. Further, the Class Notice will inform the Settlement Class Members that Class Counsel will seek 33% of the class benefit. As with the incentive award to the class, the Settlement Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7. Administration and Notice

All costs of notice and claims administration shall be advanced by XPO Logistics, credited against the Settlement Fund. The Claims Administrator will be Kurtzman Carson Consultants ("KCC"), subject to this Court's approval. *Id*. §2.4. The Claims Administrator shall administer the Settlement, which includes the following duties: (1) issuing Class Notice and claim forms; (2) setting up and maintaining the settlement website; (3) accepting claim forms; (4) and issuing settlement payments. *Id*. §§ 10.

Within thirty (30) of the entry of Preliminary Approval Order, the Claims Administrator will issue the Class Notice (Exhibit 2 to the Agreement) via e-mail or mail to all Settlement Class Members in accordance with the Notice Program described in the Settlement Agreement. *Id*. §

10.2.  The Notice Program will include a series of reminder e-mail notices and possible mail notice if it is determined that the e-mail notice has not been effective.  *Id*.

Further, the Claims Administrator will establish and maintain a Settlement Website.  *Id*. § 10.2B.  The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; Website Notice; the Preliminary Approval Order; Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; the operative Complaint; the attorney fee motion and any other materials the Parties agree to include. *Id*.

## III.  ARGUMENT

### A.  The Settlement Approval Process

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion"  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced."  H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class

> action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

9

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage."); *Kessler v. Am. Resorts International's Holiday Network, Ltd*., Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist.

LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase.") In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199. In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of the Settlement will allow all Settlement Class Members to receive notice of the proposed Settlement's terms and the date and time of the final settlement approval hearing, at which Settlement Class Members may voice approval of or opposition to the Settlement, and at which the parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632

**B. The  Settlement Resulted From Arm's Length Negotiations And Is Not The Product of Collusion**

As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg*, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-pank" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *Newberg*, §11.42.

11

As detailed above, the Settlement is the result of years of litigation, three mediations before Judge Andersen (Ret.) and Judge Holderman (Ret.), additional months of negotiations, and extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class actions. Thus, Counsel for both parties understand the legal and factual issues involved in this case.

Also, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's TCPA claims and conducted written and oral discovery to identify the Settlement Class and prosecute the class claims. Through this discovery, Class Counsel learned information regarding XPO's policies and procedures with respect to its independent contractors and the method of how calls are placed and how XPO contends consent to make such calls is obtained. Class Counsel obtained comprehensive records of the survey calls in discovery, showing the dates of the calls, the telephone numbers dialed, as well as the name and address of the person called. Plaintiff's expert analyzed these records and identified the telephone numbers that were assigned to a cellular telephone service at the time of the survey calls by cross referencing the numbers against cellular number databases that determines the number was a cellular telephone at the time of the call. Plaintiff also deposed XPO's expert, three separate Rule 30b(6) corporate designees as well as individual XPO employees. These depositions took place across the country.

As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

C.     **The  Settlement is Within the "Range of Reasonableness" for Preliminary Approval**

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

1. **The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits**

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

a. **The Monetary Amount Offered in Settlement**

The Settlement requires XPO Logistics to pay $7,000,000 into the Settlement Fund. Out of this fund, all Settlement Class Members who make a valid claim will receive their *pro rata* share of cash payments. *Exhibit 1.* The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to Settlement Class Members. The Settlement Fund created by the Settlement is comparable to or better than many similar TCPA settlements. Furthermore, the monetary amount achieved by the Settlement is an outstanding result for Settlement Class Members, particularly because TCPA damages are purely statutory damages, in that Settlement Class Members have hard-to-quantify out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $7,000,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public.

Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by experienced mediators and former district judges. Further, the Settlement compares favorably to other TCPA class actions settlements. Courts have approved other TCPA class action settlements involving similar putative classes that achieved much smaller *pro rata* monetary recoveries.[7]

Indeed, courts have found similar TCPA class action settlements to meet the standards for preliminary approval and, as well as final approval. *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015)[8] (entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member would be awarded $39.66) (Holderman, J.); and *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant).

---

[7] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).
[8] *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS, Final Judgment and Order of Dismissal, Dkt. No. 160 (S.D. Cal. Feb. 5, 2015).

For all of the above reasons, the monetary amount recovered through the Settlement—on par with TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

### b.    The Strength of Plaintiff's Case

Plaintiff continues to believe that his claim against Defendant has merit and that he would make a compelling case if his claims were tried.  Nevertheless, Plaintiff and the Settlement Class would face a number of difficult challenges if the litigation were to continue.

As set out above, the main dispute in this matter is consent. As noted above, XPO contends that providing a number relating to the delivery constitutes consent.  XPO also contends that the individual independent contractors who delivered the items where trained to advise the class member that they would be receiving a survey call, which raises individual consent issues.

These issues impact both the underlying merits and class certification.  While Plaintiff continues to believe that class certification would be achievable, "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases).  For example, in *Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue.  On the contrary, in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence

15

illustrating that consent could not be shown with common proof. If XPO were able to present convincing facts to support its position, there is a risk that the Court would decline to certify the class, leaving only the named Plaintiff to pursue his individual claims.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields,* No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there remains a risk of losing a jury trial. And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal.

Despite these disagreements, the parties reached settlement after participating in robust mediations as set out above. The Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

### 2.     Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve extensive

motion practice, including Plaintiff's motion for class certification and motions by XPO for summary judgment. Any judgment in favor of Settlement Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the Settlement Class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[9] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[10]; (2) Class Counsel litigated this case for several years, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[11]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after three robust mediation sessions before experienced mediators and former judges.[12] *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . .

---

[9] *Keogh Decl.* ¶ 12.

[10] *Keogh Decl..* ¶¶ 9-13,

[11] *Keogh Decl.* ¶¶ 3-5.

[12] *Id.* ¶ 6.

suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").  This factor therefore weighs in favor of preliminary approval.

### 5.  The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was reached after almost three years of litigation and just before the conclusion of expert discovery.  As noted above, discovery has been robust.  At the time of the settlement, Class Counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate.[13]

### D.  Provisional Certification of the  Settlement Class is Appropriate

For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined in the Agreement.  Agreement §2.25.  Provisional certification for settlement purposes permits notice of the proposed  Settlement to issue to inform  Settlement Class Members of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  Defendant has agreed to provisional certification of the Settlement Class, as defined in the Agreement, solely for purposes of this Settlement.  For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

---

[13] *Id.* ¶ 12.

### 1.    The Rule 23(a) Requirements are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 325,000 people throughout the United States who received prerecorded survey calls to their cell phones by XPO after IKEA deliveries, and joinder of all such persons is impracticable.  *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).  The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on XPO's calls to the Settlement Class Members on their cell phones.  *See Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding the following common questions: "1) whether Defendant violated the TCPA by faxing advertisements without first obtaining express invitation or permission to do so; 2) whether Plaintiff and other class members are entitled to statutory damages; and 3) whether Defendants acts were 'willful' or 'knowing' under the TCPA and, if so, whether Plaintiff and other class members are entitled to trebled damages.").  The typicality requirement is satisfied because Plaintiff's TCPA claims, which are based on IKEA survey calls to cell phones, arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213.  The adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class.  *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16.  Further, Plaintiff is represented by qualified and competent counsel who have extensive

experience and expertise in prosecuting complex class actions, including TCPA actions.  *See id.*;
*Keogh Decl.* ¶¶ 9-13, 14-24.

## 2.     The Rule 23(b)(3) Manageability Requirements are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions
comprise a significant aspect of the case and can be resolved for all  Settlement Class Members in
a single adjudication.   Common issues predominate here because the claims of the Settlement
Class members arise from XPO's alleged common practice of using a prerecorded voice to contact
consumers on their cell phones without their consent for survey calls after an IKEA delivery.  *See
Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May
27, 2008) (finding common issues such as "how numbers were generated from Defendant's
database and whether Defendant's actions . . .  violated the TCPA" to predominate, and that the
issue of consent might be resolved through common proof such as "the source of the numbers"
and "how Defendant selected who was to receive the [ ] faxes").

Because the claims are being certified for purposes of settlement, there are no issues with
manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request
for settlement-only class certification, a district court need not inquire whether the case, if tried,
would present intractable management problems . . . for the proposal is that there be no trial.")
And, resolution of hundreds of thousands of claims in one action is far superior to individual
lawsuits, and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist.
LEXIS 41766, at *14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303
(N.D. Ill. 2005)) ("In consumer actions involving small individual claims, such as this one, class
treatment is often appropriate because each member's damages 'may be too insignificant to

provide class members with incentive to pursue a claim individually.'")  For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### E.     The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *Manual for Compl. Lit., supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

21

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibit 3 and 5 to the Agreement, satisfy all of the criteria above. The Notice Plan provides for direct, individual notice via either email or mail. Agreement §10. The Claims Administrator will send a second email to those Settlement Class Members that received individual notice via email two weeks after the first email is sent. The Claims Administrator will send a final email notice to these Settlement Class Members one week prior to the Notice Deadline. The E-mail and Mail Notice shall direct recipients to the Settlement Website. E-mail Notice shall include an active hyperlink to the Settlement Website. *Exhibit 1* at 10.2.

The Claims Administer will provide the parties with an estimated claim rate four weeks after Settlement Class Members are given initial notice of the settlement. Depending on the then-current claims rate, the Parties will jointly determine whether the Claims Administrator will be directed to provide additional postcard notice to those Settlement Class Members who have not submitted a valid Claim Form. *Id*.

In addition, notice will be provided to Settlement Class Members online through the Settlement Website. *Id*.

## IV.  **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the Settlement Class and appoint Plaintiff as class representative; (3) appoint his attorneys Keogh Law, Ltd., as Class Counsel; (4) approve the proposed Notice and Claims Program, to be administered by KCC; (5) direct that Notice be provided to the Settlement Class pursuant to the terms of the Agreement; (6) establish a procedure

22

for Settlement Class Members to object to the Settlement or exclude themselves from the Class; (7) set a deadline s after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Settlement Class, or seek to intervene or submit a Claim; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order attached as *Exhibit 3*, which provides the following schedule:

| | |
|---|---|
| _____<br><br>[45 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| _____<br><br>[45 days after the date of this Order] | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |
| _____<br><br>[105 days from the date of this Order] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____<br><br>[105 days from the date of this Order] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____<br><br>[14 days prior to Final Approval Hearing] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval, including responses to any objections. |
| ____<br><br>[No earlier than 165 days from the entry of this Order] | Final Approval Hearing |

Dated: October 13, 2017

Respectfully Submitted,

By:   _s/ Keith J. Keogh_
KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258

_Attorneys for Plaintiff and the Proposed Class_