**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VINCENT LEUNG, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> XPO LOGISTICS, INC., <br> Defendant. | No. 15 CV 03877 <br><br> Judge Edmond E. Chang |

**MOTION FOR AND MEMORANDUM IN SUPPORT OF
ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND AND SETTLEMENT ....................................................................... 2

        A.      Procedural Background............................................................................... 2

        B.      Discovery .................................................................................................... 2

        C.      The Parties' Mediation ............................................................................... 3

        D.      The Settlement ............................................................................................ 3

III.    LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS...................................... 5

IV.     ARGUMENT ................................................................................................................. 5

        A.      The Court Should Calculate Fees as a Percentage of the Fund ............................. 5

        B.      Counsel's Request Is Within the Market Rate ........................................................ 7

        1.      The Requested Fee Comports with the Contracts Between Plaintiff and Counsel. 8

        2.      The Requested Fee Reflects the Fees Awarded in Other Settlements. ................... 9

        a.      Pre-Pearson Percentage of the Fund Settlements................................................... 9

        b.      Post-Pearson: The Pearson Presumption Did Not Alter the Market Rate for Fees
                11

        3.      Other Factors Support the Requested Fee............................................................ 12

        a.      Risk of Nonpayment .................................................................................. 12

        b.      Quality of Performance and Work Invested ...................................................... 17

        c.      Stakes of the Case ................................................................................... 18

        C.      The Requested Service Award for Mr. Leung Should Be Approved. .................. 19

V.      CONCLUSION................................................................................................. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*
  No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ...................................................... 11
*Allen v. JPMorgan Chase Bank, NA*
  No. 13-8285 (N.D. Ill. Oct. 21, 2015)............................................................................... 11, 19
*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*
  No. 1:09-CV-1162, 2016 WL 6272094 (W.D. Mich. Mar. 1, 2016)........................................ 20
*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*
  743 F.3d 243 (7th Cir. 2014) .................................................................................................. 5
*Balschmiter v. TD Auto Fin. LLC*
  303 F.R.D. 508 (E.D. Wis. 2014) ..................................................................................... 14, 16
*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*
  480 F. Supp. 1195 (S.D.N.Y. 1979)........................................................................................ 10
*Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) ................................................ 20
*Bickel v. Sheriff of Whitley Cnty*
  No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015)................................................... 12
*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...................... 14, 16
*Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017) ............................................................................. 13
*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................... 5
*CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) ............. 9
*CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007)..................................... 9
*City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ............... 10
*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ......................................................................... 19
*Craftwood Lumber Co. v. Interline Brands, Inc.*
  No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ...................................................... 6
*Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014)......................................................... 9
*Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) ................................... 9, 19
*Donaca v. Dish Network, LLC.*, 303 F.R.D. 390 (D. Colo. 2014)................................................ 15
*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) ........................................... 6, 13
*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) ......................... 9
*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) .............................................................. 7, 8
*Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010)................. 15, 17
*Greene v. Emersons Ltd.*, 1987 WL 11558 (S.D.N.Y. May 20, 1987)........................................ 10
*Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) ..................................................... 16
*Hageman v. AT & T Mobility* LLC
  No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ............................. 20
*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) ...................................................................... 9
*Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012)............... 20
*Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009)............................................ 9
*Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009)............................................................ 9
*Ikuseghan v. Multicare Health Sys.*
  No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .................................. 20

*In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ........................................ 10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ........................................................................ 15, 17

*In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ..................................................... 10

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir.2011) ............................ 11

*In re Capital One Tel. Consumer Prot. Act Litig.*
80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................... 6, 10, 11, 17

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) ..................................................... 10

*In re Dairy Farmers of Am., Inc.*
MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015).................................................. 12

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
280 F.R.D. 364 (N.D. Ill. 2011).............................................................................. 5, 10

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................... 18

*In re Mego Fin. Corp. Sec. Litigation*, 213 F.3d 454 (9th Cir. 2000)............................................ 10

*In re Synthroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003) .................................................... 5

*In re Synthroid Mkt. Litig.* 264 F.3d 712 (7th Cir. 2001) .................................................... passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................. 6

*Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. 2013)....................................... 14, 15, 16

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) .................................................................... 8, 13

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ................................................. passim

*Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) ................................... 13

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*
No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015)........................................ 20

*Lees v. Anthem Ins. Companies Inc.*
No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015)................................ 20

*Mangone v. First USA Bank*
206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................... 8

*Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) ............................................ 9

*Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) ............................................... 11

*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)...................................................... 6

*McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015)....................... 11

*Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016)..................................... 11

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*
No. 08-5959 (N.D. Ill. Dec. 21, 2011)....................................................................... 9

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)................................................................ 7

*Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)............. 12

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*
Case No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001)............................................ 8

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*
No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012).................................................. 14, 16

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) ..................... 9

*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) ...................................... 7, 13

*Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. March 31, 2016)................ 11

*Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.) ......................................................................... 2, 14

*Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ................................................ 5, 12, 14, 17

iii

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................................................... 8, 10

*Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) .................................................... 10

*Will v. Gen. Dynamics Corp.*
    Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ............................. 10, 20

*Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ............... 12

**Statutes**

47 U.S.C. § 227 ................................................................................................................. 1, 2

## I.    INTRODUCTION

On October 19, 2017, this Court preliminarily approved a proposed class action settlement between Plaintiff Vincent Leung and Defendant XPO Logistics, Inc. ("XPO"). This Settlement creates a $7,000,000, non-reversionary common fund for the benefit of nearly 313,000[1] consumers for whom XPO placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Class Counsel zealously prosecuted Plaintiff's claims for over two and half years, achieving the settlement only after extensive first and third-party discovery; contested motion practice, and over a year of arms-length negotiations that involved three mediations at JAMS with two different mediators and additional negotiations.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $2,333,334 which represents one-third of the total settlement fund, plus $52,458.90 of counsel's out-of-pocket costs[2]. This request should be approved because (1) it represents the market rate for this type of settlement and is in line with the Seventh Circuit's directive in *Pearson*, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for a service award of $10,000 to Plaintiff Leung for his work on behalf of the Class, which includes his deposition, written discovery, and settlement efforts. Such an award is routine and proper.

---

[1] Plaintiff estimated 325,000 but found 312,966 unique cell phone numbers called after deduplication procedures.

[2] The expenses exclude any internal costs such as copying costs, legal research or telephone costs. *Keogh Decl.* at ¶ 21.

## II.   BACKGROUND AND SETTLEMENT

### A.   Procedural Background

On May 1, 2015, Mr. Leung filed a Complaint in the United States District Court for the Northern District of Illinois alleging that XPO violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded survey calls to cell phones without the prior express consent of Leung or the putative class members.

On May 28, 2015, XPO moved to stay this action pending the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.). Dkt. 15. On August 12, 2015, after briefing, this Court denied the motion to stay pending *Spokeo* but invited XPO to file a motion to "dismiss for lack of subject matter jurisdiction directed to Leung's allegations of actual injury." Dkt. 27. On December 9, 2015 and after full briefing, this Court denied XPO's motion to dismiss. Dkt. 41.

After the first mediation resulted in an impasse, XPO moved to bifurcate discovery so that it could move forward with summary judgment as to the consent issue. In doing so, it set forth its arguments on summary judgment in a 15 page memorandum with 35 pages of exhibits setting out the survey questions, its case law, and its theory of consent. Dkt. 52. On March 24, 2016, this Court denied XPO's motion to bifurcate. Dkt. 55.

### B.   Discovery

The Parties engaged in extensive discovery and conducted numerous status conferences with the focus on discovery. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. Class Counsel deposed XPO's expert witness, three separate Rule 30b(6) corporate designees, as well as individual XPO employees. In addition, Class Counsel filed motions to compel production of

discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105, 123, and 125.

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsels. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and Plaintiff's class TCPA claims.[3]

### C. The Parties' Mediation

The parties mediated before the Honorable Wayne Andersen ("Judge Andersen") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on March 16, 2016, and again on May 23, 2016. A third private mediation was held before the Honorable James Holderman ("Judge Holderman") of JAMS on June 23, 2017, as well as follow-up in person meetings and negotiations between Counsel and officers of XPO before reaching a resolution in principle on August 25, 2017. Prior to each mediation, the parties submitted detailed mediation briefs to the mediators setting forth their respective views on the strengths of their cases.[4] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[5]

Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[6]

### D. The Settlement

The Settlement provides that XPO will pay $7,000,000 into a common fund for the Settlement Class, which is defined as follows:

---

[3] *See* Declarations of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 1, ¶ 5.
[4] *Id.* ¶ 7
[5] *Id.*
[6] *Id.* ¶ 7-8.

> The parties whose cellular telephone numbers are identified in the call data produced in this litigation bearing the litigation production numbers XPOLG024550 and XPOLG024553 where XPO or its subsidiary placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery.

Agreement § 2.25.[7] Based on Plaintiff's expert's analysis, the class is comprised of approximately 313,000 persons. *Exhibit 1* Keogh Decl., ¶ 6.

The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. Notice and administration costs through Kurtzman Carson Consultants LLC ("KCC") are projected at $157,000 to $197,000 assuming a 5% - 10% claim filing rate, but those costs will also be impacted if there is a direct mail reminder notice. Yet, even at the higher end of the projected costs, the bid obtained is very competitive and Plaintiff will provide the updated administration costs in his motion for final approval. Settlement Class Members who submit a valid Claim are expected to receive Settlement Awards of $263 assuming a 5% claim rate and $131 assuming a 10% claim rate. *Keogh Decl.* at ¶ 18. This is a terrific outcome given that the non-fee-shifting TCPA generally provides for $500 in damages per violation. 47 U.S.C. § 227(b)(3).

Plaintiff respectfully requests that the Court approve attorneys' fees of $2,333,334 which represents one-third of the total settlement fund[8], plus $52,458.90 of counsel's out-of-pocket costs, and a $10,000 service award for Plaintiff Leung. As explained below, the requested fee award is

---

[7] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement. *Id*.

[8] The requested fee is 34.3% of the fund if the $197,000 in estimated costs of notice and administration is excluded.

in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested service award is comparable to other TCPA cases, and should be approved.

## III.  LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).  However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class."  *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

## IV.  ARGUMENT

### A.  The Court Should Calculate Fees as a Percentage of the Fund

The Court should use the percentage of the fund approach to determine fees in this case. Courts look to *In re Synthroid Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and

Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015)(Discussing fee award in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F.

Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

### B. Counsel's Request Is Within the Market Rate

The Court is also tasked with determining what percentage of the settlement fund is appropriately allocated as attorney's fees. The Seventh Circuit has held that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, the court held that there should be a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). Although *Pearson* establishes that courts must also consider the value of the settlement exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorneys' fees in consumer class actions.

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $$2,333,334 in attorney's fees. This request amounts to one-third of the entire $7,000,000 Settlement Fund, or 34.3% of the fund remaining after notice and administration costs[9] and the requested service award are excluded. The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other factors are relevant, as well, including the risk counsel

---

[9] The percentage is based on the higher end of the projected administration costs of $197,000.

undertook in accepting the case, the quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained below, each of these factors supports the requested fee.

1.  The Requested Fee Comports with the Contracts Between Plaintiff and Counsel.

The requested fee award is not only supported by the fee awards deemed reasonable in similar class cases; it is in line with representation agreements commonly entered into in this District, including between Plaintiff and his counsel. In addition to analyzing the market price for legal services from analogous cases, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiff entered into a retainer agreement with Class Counsel that reflects or exceeds this fee range, as is normal in consumer TCPA cases in this District. Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

2.  The Requested Fee Reflects the Fees Awarded in Other Settlements.

a.  Pre-Pearson Percentage of the Fund Settlements.

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. Some TCPA cases where this happened are as follows: *Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) (same).

Some other, non-TCPA cases where one-third of the entire fund was awarded, include: *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76 Civ. 2178 (CSH), 1987 WL 11558, *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

While it is true that Judge Holderman did an extensive empirical analysis of TCPA settlements around the country in *In re Capital One*, 80 F. Supp. 3d at 795, his ultimate analysis

included cases from the Ninth Circuit, where the "benchmark" for attorney's fees in class actions is 25%. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir.2011); *cf. Kolinek*, 311 F.R.D. at 501 (making similar observation that the analysis failed to account that the benchmark was lower in the Ninth Circuit=). In addition, the percentage of the fund did not control for administration costs from the amount of the fund, which, if it had, would have dramatically increased the percentages.

        *b.*     Post-Pearson: The Pearson Presumption Did Not Alter the Market Rate for Fees.

The 34.3% fee – after deducting administration costs and any service award, which is 33% of the total fund, represents the post-*Pearson* market price, and is therefore reasonable. That the rate is within the market is reflected in the following fees approved by judges in this District in TCPA cases since *Pearson*:

- 36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

- 38% of total fund: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015), transcript of proceedings, <u>Exhibit 2</u> (Shah, J.).

- 36% of the fund minus notice/admin costs: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.).

- 33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.).

- 33% of total fund or 35.4% of the fund after notice costs.  *Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016) (Dkt. 379 at 5)(Lee, J.)

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding

11

33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).[10] Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

  3. <u>Other Factors Support the Requested Fee.</u>

   Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel, and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

   *a.* Risk of Nonpayment

   As set forth in the motion for preliminary approval, this action involves sharply opposing positions on many issues. For example, the parties disagreed whether there was consent for these

---

[10] *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions but such information is basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

calls. XPO contended under applicable FCC guidance and governing case law, the context and purpose of XPO's calls fall within the boundaries of the scope of the customers' consent given for calls made in connection with the deliveries. *E.g.*, *Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017); *Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) (holding that when plaintiff provided her phone number at the point of sale to effectuate a furniture delivery, she gave prior express consent to receive a pre-delivery call and a post-delivery survey call). Plaintiff contended that *Blow* supported his position as it held: "providing one's phone number does not constitute carte blanche consent to receive automated marketing messages of any kind". *Id*. at *26-27. Thus, "the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554, *11 (N.D. Ill. 2014).

The parties also disagree as to whether a class can be certified. As such, Class Counsel faced substantial risk and uncertainty at the outset of this action that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk supports the requested fee award.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers

13

for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted the case despite that extensive class discovery would likely be required, with not only XPO, but also then-unknown third-party retailers.

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification or grant certification along with summary judgment for XPO. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

And then there were the overhanging *Spokeo* case before the Supreme Court affecting standing, which was briefed in this case.[11] Dkt. 15 and 27.

---

[11]     *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

14

Success, especially at the outset of this action, was by no means assured. The Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed on in May 2015, the Court must look at the risks associated with the case on that date.

Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, or counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff). The risk was real. As detailed in the accompanying declaration of counsel, plaintiff's lawyers lose TCPA cases all the time, both through summary judgment and through denial of class certification. *See, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014) (denying class certification in TCPA action); (Keogh Decl. ¶ 10).

One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class. Those facts are not (and cannot be) known by plaintiff's counsel *ex ante*, and typically require contentious discovery and litigation before ever becoming known. This case is no different; the Parties engaged in extensive discovery and conducted numerous status conferences with the focus on discovery. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. In addition, Plaintiff filed motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105, 123, and 125.

TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data).

Plaintiff also faced challenges at class certification. Although Plaintiff believes that consent in this case is a classwide issue, Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin., LLC*, No. 13-1186, 2014 WL 6611008, at *19–20 (E.D. Wis. Nov. 20, 2014) (same); *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Litigating these issues would have risked recovering nothing for the class, and would have required significant additional expenditure of time, money, and resources — for which Class

Counsel would not be compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, 10 C 117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

Of course, the facts and circumstances of every case are different and must be individually considered and separately analyzed, but it bears noting that Class Counsel have lost a number of TCPA class actions without any recovery for the class or receiving any compensation for their fees or costs. (Keogh Decl. ¶ 10). In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% in TCPA class settlement).

b.      Quality of Performance and Work Invested

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial discovery, and adversarial negotiations to achieve a $7,000,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after over two-and-a-half years of litigation. Class Counsel successfully overcame numerous hurdles, from adversarial

17

motion practice to contentious first and third-party discovery requiring multiple motions to compel. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132 (Status hearings on discovery) and motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105, 123, and 125.

In addition to their substantial litigation efforts, Class Counsel devoted numerous hours to negotiating the settlement, as well, which included preparing their clients' mediation submissions, attending three separate mediation sessions, and months of continued negotiations including face to face meetings with Class Counsel and officers of XPO. (Keogh Decl. ¶ 7 - 8) And Class Counsel spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, and drafting the motion for preliminary approval.

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. (Keogh Decl. ¶¶ 22-48) Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). Given the outstanding $7,000,000 settlement obtained for the class, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

<em>c.</em>  Stakes of the Case

The stakes of the case further support the requested fee award. This case involves hundreds of thousands of Settlement Class Members who allegedly received unsolicited survey calls from XPO. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as here each class member only received a small number – usually one – of these survey calls. Indeed, individual litigants likely would have to provide proof of calls well beyond what is

required here to submit a claim and call records may not be available going back to when the class period begins, making it even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### C. The Requested Service Award for Mr. Leung Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $10,000 to Plaintiff Vincent Leung for his efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff answered discovery, was deposed, and fully participated in this litigation. Mr. Leung also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. (Keogh Decl. ¶ 4.)

Moreover, the amount requested here, $10,000, is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk,*

*P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement). The requested service award of $10,000 for Plaintiff is reasonable and should be approved.

## V. CONCLUSION

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $2,333,334 which represents one-third of the total settlement fund, plus $52,458.90 of counsel's out-of-pocket costs. Class Counsel further requests that the Court approve a service award to Plaintiff Leung in the amount of $10,000.

Dated: December 1, 2017

Respectfully Submitted,

By: *s/ Keith J. Keogh*
KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258

*Attorneys for Plaintiff and the Proposed Class*