# EXHIBIT 2

1

```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   NICHOLAS M. MARTIN, on behalf of      )
     himself and others similarly situated, )
 4                                          )
                         Plaintiff,         )
 5                                          )
          vs.                               )   No. 13 C 6923
 6                                          )
     JTH TAX, INC., doing business as       )
 7   Liberty Tax Service,                   )   Chicago, Illinois
                                            )   September 16, 2015
 8                       Defendant.         )   12:30 o'clock p.m.

 9
                     TRANSCRIPT OF PROCEEDINGS -
10                      Final Approval Hearing
                 BEFORE THE HONORABLE MANISH S. SHAH
11

12   APPEARANCES:

13   For the Plaintiff:       BURKE LAW OFFICES, L.L.C.
                              BY:  MR. ALEXANDER H. BURKE
14                                 MR. DANIEL J. MAROVITCH
                              155 North Michigan Avenue
15                            Suite 9020
                              Chicago, Illinois  60601
16                            (312) 729-5288

17   For the Defendant:       REED SMITH, L.L.P.
                              BY:  MS. REBECCA R. HANSON
18                            10 South Wacker Drive
                              40th Floor
19                            Chicago, Illinois  60606-7507
                              (312) 207-7507
20
     Also Present:           Mr. Nicholas M. Martin, Plaintiff
21                           Ms. Kelly Kratz, Dahl Administration

22

23               COLLEEN M. CONWAY, CSR, RMR, CRR
                       Official Court Reporter
24            219 South Dearborn Street, Room 1714
                      Chicago, Illinois  60604
25                        (312) 435-5594
                  colleen_conway@ilnd.uscourts.gov
```

1    (Proceedings heard in open court:)

2         THE CLERK:  13 C 6923, Martin versus JTH Tax.

3         MS. HANSON:  Good afternoon, Your Honor.  Rebecca

4    Hanson on behalf of the defendant.

5         MR. BURKE:  Good afternoon, Judge.  Alexander Burke

6    for the plaintiff.

7         MR. MAROVITCH:  Good morning.  Dan Marovitch for the

8    plaintiff.

9         MR. BURKE:  And also with us today, we have Nicholas

10   Martin, the plaintiff, is here.  And in the gallery, Your

11   Honor, is Kelly Kratz, who's a representative from our class

12   administrator, Dahl Administration, to answer any questions

13   Your Honor may have.

14        THE COURT:  Okay.  Good afternoon.  We're here for a

15   final approval hearing on the proposed settlement.

16        I have the plaintiff's motion for final approval; I

17   have the motion for attorneys' fees; I have the objections of

18   Mr. Taishoff, T-a-i-s-h-o-f-f, Ms. Exum, E-x-u-m, Ms. Russell;

19   the letter potentially objecting/potentially excluding

20   Mr. Yoder; and then the recent correspondence, both from

21   Mr. Taishoff and Ms. Exum.

22        Are there any other materials that I have and should

23   acknowledge that I have and have reviewed?

24        MR. BURKE:  Judge, there is a fee petition that the

25   plaintiff filed --

1          THE COURT:  Right.

2          MR. BURKE:  -- some time ago.  And I believe that is

3     all.

4          THE COURT:  Okay.

5          MR. BURKE:  I did have some correspondence with Ms.

6     Exum over the last few days, but I am not intending to submit

7     that for the record unless I need to.

8          THE COURT:  Okay.  Okay.  No.  And I did have the fee

9     petition as well.  So I do believe I have reviewed everything.

10         We're also here for a hearing.  No other participants

11    have appeared today, so there are no objectors present,

12    although this is the opportunity for any objectors to present

13    additional objections or arguments.

14         I did notice in the e-mail correspondence between

15    counsel and Mr. Taishoff where he ultimately sent the

16    affidavit, his supplemental affidavit.  I think counsel told

17    him that the hearing was set for 11:00 a.m. Central time, but

18    the hearing is actually at 12:30 p.m. Central time.

19         MR. BURKE:  Yes.

20         THE COURT:  Luckily, Mr. Taishoff said he didn't have

21    anything further that he wanted to say, so there was no harm

22    done there in the communication about the time.  I find that he

23    knows full well that this hearing is happening and has had

24    abundant opportunity to have his views expressed.

25         Do the parties want to present any additional

1    evidence other than what's in the papers?  And is there any

2    update on the number of claims that we should talk about now?

3        MR. BURKE:  We have updates on numbers, and I do have

4    one suggestion or request.

5        I did -- I should notify the Court that the mailings

6    to the three objectors were sent late.  It was my fault.  I

7    filed the brief on a Friday evening and did not remember to

8    mail those documents.  So when I realized that -- when I

9    received Ms. Exum's submission on Monday, I got on the phone

10   and I called all three.  I called Mr. Yoder as well, although I

11   didn't reach him.  I reached Mr. Taishoff, Ms. Exum, and Ms.

12   Russell.

13       Both Ms. Exum and Mr. Taishoff indicated that -- I

14   offered to ask for extra time for them to submit anything they

15   wanted to.  There's nothing allowed in the prior orders for a

16   reply brief or anything like that, but I thought that it was

17   equitable to at least suggest this.

18       Two class members indicated they did not want extra

19   time.  Ms. Russell requested that I ask for an extra two weeks

20   for her to submit something, and so the date that we came up

21   with was September 28th.

22       I have conferred with defense counsel, and defense

23   counsel does not oppose this request, and I do not oppose the

24   request.  Again, there was no allotment in the preliminary

25   approval papers for a reply brief, but I thought that it was

| | |
|---|---|
| 1 | the right thing to do to suggest this, and so I am making the |
| 2 | suggestion or the request. |
| 3 | THE COURT:  Did Ms. Russell indicate in any way what |
| 4 | her reply was going to be?  Her objection itself was not a |
| 5 | particularly substantive objection. |
| 6 | MR. BURKE:  I received an e-mail from her, because I |
| 7 | inquired again this morning as to whether she intended to |
| 8 | submit something, and she said to me, "I need extra time |
| 9 | because I'm not in agreement with the settlement amount to be |
| 10 | paid out to me of $36.  September 28th is good timing." |
| 11 | THE COURT:  Okay.  Well, before I address that -- |
| 12 | MR. BURKE:  May I say one more thing -- |
| 13 | THE COURT:  Yeah, go ahead. |
| 14 | MR. BURKE:  -- about that?  I would say that the |
| 15 | final approval papers were posted to the settlement website, |
| 16 | which is publicly available, the day after we filed it.  So |
| 17 | September 1st, the papers were publicly available and I believe |
| 18 | were properly served on the class in that manner. |
| 19 | I am not aware of any case law that requires me to |
| 20 | mail these papers to the objectors, but I again thought it was |
| 21 | the right thing to do. |
| 22 | THE COURT:  Okay.  Well, let me say what I was going |
| 23 | to say up top. |
| 24 | MR. BURKE:  Okay. |
| 25 | THE COURT:  Because it was going to lead me to ask |

1    whether I should keep going or whether people want more time,

2    which is this, that I do intend to find that the proposed

3    settlement is fair, reasonable, and adequate with the exception

4    of the incentive award for reasons that I will explain.

5         I intend to find that a $20,000 incentive award is

6    disproportionate under the circumstances of this case and that

7    $10,000 is an appropriate award.

8         With that observation up-front, is there any reason

9    for me not to proceed with my findings with respect to the

10   remainder of the issues on the table?

11        I think I have the authority, even consistent with

12   the terms of the settlement agreement, to adjust the incentive

13   award and still approve the settlement agreement, but I wanted

14   to pause --

15             MR. BURKE:  Yes.

16             THE COURT:  -- at this moment to see what the parties

17   wanted to do.

18             MR. BURKE:  Of course, Your Honor has that

19   discretion, and I -- what comes to my mind is whether it would

20   be constructive or whether Your Honor would like to hear a

21   couple comments from me on the incentive award issue.

22        I have been working with Mr. Martin as his lawyer

23   with respect to TCPA claims for quite some time.  He -- I would

24   frame him as a sort of champion of TCPA rights.  In front of

25   Judge Martin, we obtained a certified class, and class members

1    in that settlement received over $600 each.

2           He perseveres in these cases despite real pressure

3    from the defendant and probably from -- internally from himself

4    to settle individually for a premium, and he does not generally

5    do that and he did not do that in this case.  Instead, he

6    pushed through for the class.

7           Mr. Martin and I speak on the phone regularly about

8    what's happening in the case, and we did in this case.  There

9    were a lot of difficult turns with discovery in this one, with

10   the Philippines-based entity, the -- there was the auto-dialer

11   company, the New York entity that was uncooperative with

12   producing subpoena responses.

13          I would also say that Mr. -- I would note that

14   Mr. Martin attended the mediation at JAMS and contributed

15   materially at that mediation.

16          For those reasons, we would urge Your Honor to accept

17   the proposed $20,000 as an incentive award.

18          THE COURT:  Okay.  Assuming I am not persuaded, is

19   there any reason I shouldn't continue in evaluating the

20   settlement and entering an order?  And I'll state more reasons

21   about the incentive award as we get to it.

22          MR. BURKE:  Understood.  Some of the numbers

23   immaterially changed.  We've got, with some cures -- we sent

24   out cure letters to 438 class members.  So the number of timely

25   claims is 39,381 as of today.  It is possible that we may get

1    other timely postmarked cures in the future.

2           There is an issue of deficient claim forms, and those

3    numbers, as identified in the papers, have also altered.

4           The total number of deficient claims forms as of --

5    well, I think this is as of Monday, is 5,597.  The same -- I

6    believe the same number as before, 5,251, were submitted by

7    class members, but they have the wrong phone number on them.

8    438 were submitted by someone who appeared to be associated

9    with a class member but had something wrong with it, like it

10   was unsigned.  And then 134 were received that had no apparent

11   relationship to any class member.

12          I think that the -- you know, and so those are the

13   change in the numbers.

14          THE COURT:  The difference between the 5,251 and the

15   5,597 is -- I guess is the 5,251 a subset of the 5,597 or are

16   those two separate pools of deficient claims?

17          MR. BURKE:  Subset.

18          THE COURT:  Okay.  And then is the difference --

19   what's the difference like in terms of quality of deficiency or

20   the reason for deficiency or --

21          MR. BURKE:  Right.  So the best but deficient claims

22   are the 5251.  Those are -- appear to have come from class

23   members but have the wrong phone number.  Then -- and, Judge, I

24   haven't added these up.  We were just going over them today.

25   But 438 were unsigned.  134 appear to have no relationship to

1    the -- to any class member.

2              And I should say there is some float here because we

3    have 346 that were cured of the unsigned.  So we sent -- oh,

4    gosh.  We sent 572 cure letters.  So these are -- we sent cure

5    letters to all of the deficient claimants except for the 5251.

6              THE COURT:  Okay.  So the -- I am -- what I am trying

7    to do is make sure I understand who would remain in the

8    deficient category and not get a claim approved if I were to

9    agree with the parties' proposal, which is that we should

10   include the 5251 in the claims.  And so we would be talking

11   about some group of people whose claims were deficient and are

12   not associated with a phone number that's been identified as

13   being in the class.

14             MR. BURKE:  So we sent out 572 cure letters and 226

15   remain not responded to.  Additionally, there are 426 late

16   claims.  That 426 is not included in the deficient numbers that

17   I've been -- 426 late claims.

18             THE COURT:  Okay.  Well, I conclude that the 426 late

19   claims should be allowed and the 5,251 deficient claims that

20   are nevertheless associated reliably with a class member should

21   also be allowed.  Any other remaining claims that are deficient

22   are deficient and won't be able to be compensated.

23             MR. BURKE:  Perhaps other -- unless we receive a

24   cure?

25             THE COURT:  Unless a cure is received.

1    MR. BURKE:  Very well.

2    THE COURT:  And the claims administration process can

3    take care of that.

4    MR. BURKE:  Yes.

5    THE COURT:  All right.  Okay.  So with those numbers

6    in mind, I don't think that changes roughly our participation

7    rates or our -- the overall benefit to individual claimants who

8    are going to be receiving some compensation.

9    MR. BURKE:  It --

10   THE COURT:  Is that --

11   MR. BURKE:  It will modify things a little bit, but

12   people will receive $36, roughly, and it bumps our

13   participation rate a few percentage points.

14   THE COURT:  Okay.  Okay.  Well, with those initial

15   comments and findings and updates from the parties, is there

16   anything the defense wants to submit or add other than what's

17   in the papers?

18   MS. HANSON:  No, Your Honor.

19   THE COURT:  Okay.  The notice, I find, was effective

20   and advised the class of its rights and provided plain

21   instructions.  It reached over 90% of the individual members

22   individually and was available online and more than adequately

23   comported with the rule and due process in notifying the class.

24   The class should be certified under Rule 23.  It's a

25   numerous class, over 290,000 phone numbers.

1    There are common issues particularly concerning
2  whether there was an ATDS involved or not.  The class members'
3  claims are typical.  It's all about whether they got the
4  message without consent, and that makes each claim typical.

5    The plaintiff is an adequate representative.  There's
6  no reason to think that his claim is any different than any
7  other class members.  And class counsel has adequately
8  represented the interests of the class.  There's absolutely no
9  indication here that there's any antagonistic issue between the
10  class and class counsel or the class and the named plaintiff.

11    There are sufficient issues that predominate, namely,
12  whether an ATDS was used.  I think that that would predominate
13  the case.  And that class treatment is not only appropriate,
14  but really the best way to have these kinds of claims litigated
15  to resolution.  And certainly resolving it as a class is better
16  than having 291,000 separate claims.

17    My evaluation of the settlement is that it was and is
18  a fair and reasonable and adequate settlement.  There was risk
19  in this case, and compromise makes sense here.  Vicarious
20  liability in a TCPA case is not without some risk.  There is
21  also significant third-party complexity here, the
22  Philippines-based entity, as counsel mentioned earlier.
23  Continued litigation would be costly.  And, as we're about to
24  see, the recovery for the class here through settlement is
25  meaningful without having to endure protracted litigation, and

1    that has real value.

2         I do conclude from the response rates and what we've
3    seen that the feedback from the class can and should be
4    considered favorable toward the settlement.  Given the number
5    of people who bothered to take any step whatsoever, one way or
6    the other, the number that were actually opposed is incredibly
7    small, and I view that as a sign that there is little
8    opposition amongst the class to this resolution.

9         The best assessment of the fairness of the settlement
10   is to look at the outcome to the class.  And in a case
11   involving what I would conclude to be *de minimis* actual damages
12   to any individual class member, 36 or 37 dollars is a good
13   outcome.  There are better outcomes that could be had, too, in
14   a TCPA class action to individual class members.  It's
15   significantly less than statutory damages to any individual
16   claimant, and I acknowledge that and appreciate that, but as a
17   compromise, it is real money to each individual claimant that
18   they would not have seen without this case that was brought by
19   Mr. Martin.  Given the nature of the claim and the violation, I
20   think the outcome to each individual claimant is quite fair.

21        Let me address the objections.  Ms. Russell's
22   objection and her request for additional time to respond is --
23   the objection is overruled and her request for additional time
24   is denied.

25        I do find, like all members of the class, that she

1    had adequate notice of what was happening in the case.  And if

2    she had a substantive objection that was supported by something

3    other than a feeling that what she's getting is not enough, she

4    could have made that substantive objection in a more timely

5    manner.  And a reply is not required to be afforded to an

6    objector and, in this particular objection's case, I think

7    would not be useful to my evaluation of the overall settlement.

8            Her objection is that she wishes and wants more than

9    what her individual claim is worth, and I understand that

10   objection, and -- but it's overruled because it does not have

11   the benefit of what I have the benefit of, which is an overall

12   picture of the case as a whole.  The benefit to the class as a

13   whole, the elements of litigation, risk assessment, compromise,

14   and the nature of a TCPA claim are all aspects that I think Ms.

15   Russell and her objection don't adequately take into account.

16   So for those reasons, her objection is overruled.

17           I also find that Ms. Exum has an unreasonable view of

18   the individual value of her claim and a misunderstanding of the

19   nature of class action such that her objection is also

20   overruled.

21           She was given the option to exclude herself.  And if

22   she believes she has $20,000 or more in damages, she has every

23   incentive to pursue it, and she has chosen instead to object

24   and not exclude herself, and her objection is overruled.

25           As I said before, I have the benefit of seeing the

1  overall picture of the case and the benefit to the class from

2  this settlement, and the size of the class, and the nature of

3  the violation, all of which leads me to conclude that Ms.

4  Exum's evaluation of the settlement is not a reasonable one,

5  and so her objection is overruled.

6         I also overrule her objection to the extent she's

7  asking for a delay so that her complaint to the postmaster can

8  be resolved.  I find that she received the materials.  She had

9  sufficient time to voice her objection.  I find that class

10 counsel did not engage in any deception but to the contrary,

11 actually reached out to her, spoke to her about her options,

12 all in an appropriate manner, and advising her appropriately

13 and consistently with counsel's responsibility to the class.

14        That she didn't like the option of exclusion is not

15 evidence that class counsel is taking any step contrary to the

16 interests of the class.  And so accepting her description of

17 events, I conclude that counsel has conducted himself

18 appropriately.

19        She filed a document that has been docketed as a

20 motion to object.  So her motion to object is granted to the

21 extent that her objection is made a part of the record.  Her

22 objection itself is overruled.

23        Mr. Taishoff -- is that how we pronounce it?

24        MR. BURKE:  I believe so.

25        THE COURT:  Okay.  Mr. Taishoff has a similar

1    objection to the others, which I would call a small P political

2    objection to class actions and the legal profession, or what

3    has become of the legal profession as he has observed it over

4    the years.  And I appreciate those views, but they do not

5    persuade me that this particular settlement is unfair or

6    unreasonable or inadequate.

7           He does make an objection to the incentive award, and

8    so I will talk about that in a moment.  But other than that,

9    his -- and his objection about the tax consequences not being

10   adequately explained is also overruled.  Those circumstances

11   are available to all class members, and the class notice was

12   sufficient and apprised the class of what the class needed to

13   know.

14          The fee petition is approved, and the motion for the

15   attorneys' fee award is granted.

16          The percentage recovery is reasonable.  Percentage

17   recovery is a reasonable fee in this type of case.  Class

18   counsel did take on the risk on the front end.  The percentage

19   here as a percentage of the overall benefit to the class is

20   around 38%.  That is more than a third, which is a benchmark in

21   these types of cases.  But this case did involve some

22   additional risk or labor than the typical TCPA case because of

23   the third parties involved.

24          There was a motion to dismiss which was not a

25   particularly time-consuming motion to litigate as I look on the

1    docket, but there was also a mediation, all of which suggests

2    that class counsel in no way colluded with the defense to sell

3    out the class and obtain a big payday of the recovery.

4    Instead, I find that class counsel provided a good, fair

5    outcome for the class and fairly vindicated the class' rights

6    under the TCPA.  And under those circumstances, the percentage

7    is an appropriate value and compensation for class counsel.

8            And so that does take me to the incentive award.  And

9    I absolutely appreciate the need to have an incentive award

10   that creates exactly what it says it is, which is an incentive,

11   an incentive to bring these types of actions to champion the

12   rights of the consumer, but what that doesn't do for me is

13   distinguish this case from many other similar TCPA cases where

14   smaller incentive awards have been awarded.

15           The amount of effort that Mr. Martin has put into

16   this case is what I would characterize to be as standard and

17   expected but not over and above the kinds of rigors that a

18   named plaintiff who brings these kinds of cases should be

19   expected to endure.  What's been presented to me does not

20   include any rigorous discovery that he had to defend against or

21   sit through a contentious deposition or have his life

22   scrutinized in a way that some named plaintiffs find.

23           The fact that he has been a plaintiff in other cases

24   and has received an incentive award is noteworthy to me.  It

25   ultimately for me cuts a little bit in another way, which is

1  that I don't know that Mr. Martin needs additional incentive to

2  bring these kinds of cases.  And if he has the strength of

3  character and resolve to be the champion that he is, he doesn't

4  need the money to continue to be that standard bearer.

5         And at bottom, what I look at is the proportion of

6  the incentive award to the overall benefit to the class.  And

7  the cases where $20,000 or $25,000 have been the award, where

8  that is discussed and where -- it's not just a settlement where

9  there are no objections and it was approved, but where some

10 rigor was looked at in assessing the incentive award, those

11 cases involving an award of that amount generally involve more

12 money for the class or more effort or hurdles that the named

13 plaintiff had to experience.

14        And there are some studies about the proportion of

15 the fee incentive award to the class, and I think this is cited

16 in Judge St. Eve's case, *Craftwood Lumber*, where the mean

17 incentive fee award granted in consumer class actions is .08%

18 of the total recovery.

19        An incentive award of $20,000 here would be 1% of

20 what the class gets, roughly, or .6% of the $3 million, and

21 that's significantly higher than the mean incentive award in

22 consumer class actions.  And there are some cases that talk

23 about 1% being an amount that ought to be very heavily

24 scrutinized.

25        And I flagged this issue at the preliminary approval

1    hearing, and what I have received in response, including the

2    comments today, doesn't persuade me that $20,000 is an

3    appropriate award when viewed in proportion to what the class

4    is getting and the efforts that Mr. Martin went through.

5          So I do conclude that $10,000 is an appropriate

6    incentive award.  You know, obviously, if counsel wants to

7    address that on his end, that's sort of up to you, but in terms

8    of the incentive award that I am awarding, it's $10,000.

9          I think I've covered everything that I need to cover

10   in granting final approval, but if I am missing something,

11   please tell me.

12         I should also add that the change in the incentive

13   award does not, in my view, materially change the benefit to

14   the class or the terms of what this settlement involves such

15   that any additional notice or anything like that is necessary

16   to the class.  It really -- the class was well aware that the

17   incentive award was subject to Court approval and would be

18   considered.  So what from the class' perspective would end up

19   being a modest change in what they end up seeing is one that

20   they had fair notice of potentially occurring, and so no

21   additional notice would need to occur as a result of this

22   modification.

23         That, I think, covers everything that I ought to

24   cover.

25         MR. BURKE:  I think so, too, Judge.  Your comment

1    about -- at the end of what -- your comments about the

2    incentive award --

3            THE COURT:   We can -- any musings on my end that are

4    not material to my decision on final approval are just that,

5    musings.   I mean, my decision on final approval is that the fee

6    award is an appropriate fee award; that the appropriate

7    incentive award is $10,000; that the overall settlement of $3

8    million is a fair, adequate, and reasonable settlement for the

9    class; that the class has adequate notice of the case and the

10   terms of the settlement; that objections have been heard and

11   ruled upon; and anything else I said was not material to the

12   approval decision.

13           MR. BURKE:   Very well.   Thank you very much.

14           THE COURT:   I think you sent a proposed order.   Do

15   you want to send another one?

16           MR. BURKE:   I will, Judge.   I looked at it before the

17   hearing, and there are some things that need to be filled in

18   that happened here, for example, who showed up.   So we'll get

19   that put together and we'll try to get it to you this

20   afternoon, if not tomorrow.

21           THE COURT:   Okay.   When that comes in, I'll review it

22   and likely enter it.

23           MR. BURKE:   Thank you very much.

24           THE COURT:   Okay.   Thank you.

25           MR. MAROVITCH:   Thank you, Your Honor.

1          MS. HANSON:  Thank you.

2      (Proceedings concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   C E R T I F I C A T E
2
3
4
5          I, Colleen M. Conway, do hereby certify that the
6   foregoing is a complete, true, and accurate transcript of the
7   proceedings had in the above-entitled case before the
8   HONORABLE MANISH S. SHAH, one of the Judges of said Court, at
9   Chicago, Illinois, on September 16, 2015.
10
11
12          _/s/ Colleen M. Conway, CSR,RMR,CRR_          _08/24/16_
13                  Official Court Reporter               Date
                  United States District Court
14                Northern District of Illinois
                       Eastern Division
15
16
17
18
19
20
21
22
23
24
25