**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

VINCENT LEUNG, on behalf of himself and all
others similarly situated,

          Plaintiff,

          v.

XPO LOGISTICS, INC.,
          Defendant.

No. 15 CV 03877

Judge Edmond E. Chang

## VINCENT LEUNG'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.     INTRODUCTION ................................................................ 1

II.    STATEMENT OF THE FACTS ............................................ 4

     A.    Procedural Background.......................................... 4

     B.    Discovery .................................................................. 5

     C.    The Parties' Mediation.......................................... 5

     D.    The Proposed Settlement ...................................... 6

          1.    The  Settlement Class........................................ 6

          2.    Monetary Relief for  Settlement Class Members.......................... 6

          3.    *Cy Pres* Distributions ................................... 7

          4.    Settlement Class Release ............................ 10

          5.    Class Representative Service Award .......................... 11

          6.    Attorneys' Fees and Costs .......................... 11

          7.    Administration and Notice .......................... 11

III.    ARGUMENT ................................................................ 12

     A.    The Settlement Approval Process ........................ 12

     B.    The Settlement is Fair, Reasonable,  Adequate, and Should be Approved.................................................................. 14

     **1. The Monetary Amount Offered in Settlement** .......................... 15

     **2.  The Strength of Plaintiff's Case**................................ 17

     **3. Continued Litigation is Likely to be Complex, Lengthy, and Expensive** .................................. 19

     **4. The Class Response Is Positive** ................................ 19

     **5. Class Counsel Strongly Endorse the Settlement** ....................... 20

IV.    CONCLUSION................................................................ 22

**Cases**

*Adams v. AllianceOne Receivables Mgmt. Inc.*
No. 08-cv-00248 (S.D. Cal. Sept. 28, 2012)............................................................ 15

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
(N.D. Ill. May 5, 2011) ......................................................................................... 18

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ......................................................... 13, 14, 16

*Arthur v. SLM Corp.,* No. C10–0198 JLR (W.D. Wash. Aug. 8, 2012)........................ 6

*Bayat v. Bank of the West*
No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...................... 6

*Blow v. Bijora*, 855 F.3d 793 (7ᵗʰ Cir. 2017) ......................................................... 1, 17

*Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975) ........................................ 12

*Chapman v. First Index, Inc.,*
No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556
(N.D. Ill. March 4, 2014) ...................................................................................... 17

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ................................................................................ 13

*G.M. Sign, Inc. v. Brinks Manufacturing Co.,*
No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084
(N.D. Ill. March 4, 2014) ...................................................................................... 17

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ......................... 15

*Goldsmith v. Technology Solutions Co.*
No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) ................ 12

*Grannan v. Alliant Law Grp.*, P.C.
No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ......................... 6

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010)............................................................................. 15

*In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master
Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)............................. 9

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .................................................................. 20

*In re Southwest Airlines Voucher Litig.*,
No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ............... 19

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ..................... 8

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ............................................................................ 13, 14, 19

*Johnson v. Yahoo! Inc.*
  No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) ............................ 18

*Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554 (N.D. Ill. 2014) ................... 2, 6, 15, 17

*Kramer v. Autobytel*,
  No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800
  (N.D. Cal. Jan. 27, 2012) ...................................................................................... 15

*Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) ........................... 1, 17

*Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017) ........................................................... 9

*Malta v. Fed. Home Loan Mortg. Corp.*,
  No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731
  (S.D. Cal. Feb. 5, 2013) ....................................................................................... 15

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009) ...................................................................... 20

*Michel v. WM Healthcare Solutions, Inc.*
  No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014) .............................................. 6

*Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211 (W.D. Wash. Oct. 21, 2011) ....................... 15

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
  (N.D. Ill. Jan. 11, 2007) ...................................................................................... 18

*Savanna Group, Inc. v. Trynex, Inc.*,
  No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277
  (N.D. Ill. Jan. 4, 2013) ....................................................................................... 17

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................... 19

*Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.) ................................................................ 4

*Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) ................................................ 16

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ................................................................................. 15

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)... 6, 15

*Willett, et al. v. Redflex Traffic Systems, Inc., et al.*
  Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)............................................................. 9

*Wright v Nationstar.* 14 C 10457 (N.D. Ill. August 29, 2016) ................................................ 15

**Other Authorities**

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002)...................................... 12, 13, 14

*Manual for Complex Litig.,*
    at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004).................................................... 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Vincent Leung respectfully moves the Court for final approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Leung ("Plaintiff" or "Leung") and Defendant XPO Logistics, Inc. ("XPO Logistics"), attached hereto as *Exhibit 1*. The proposed Settlement would resolve all claims in the above-entitled action. Plaintiff alleges that XPO Logistics violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by placing prerecorded survey calls to cellular telephones without the prior express consent of Plaintiff and the putative class members.

Under the Settlement, XPO Logistics is required to pay $7,000,000 into a settlement fund ("Fund") for a class consisting of approximately 311,013[1] persons for whom XPO or its subsidiary placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery. Settlement Class Members who file valid claims will receive a pro rata cash payment from this Fund. Not a single penny of the Fund will revert back to XPO Logistics.

This action involves sharply opposing positions on many issues. For example, the parties disagreed whether there was consent for these calls. XPO Logistics' contended under applicable FCC guidance and governing case law, the context and purpose of XPO's calls fall within the boundaries of the scope of the customers' consent given for calls made in connection with the deliveries. E.g., *Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017); *Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) (holding that when plaintiff provided her phone number at

---

[1] Plaintiff initially represented the class size was approximately 325,000, but after consolidating the data sources, the class list was 312,966, which was further narrowed by KCC, which removed 1,953 additional duplicates for an actual class size of 311,013. *See Exhibit 2* at ¶ 5.

1

the point of sale to effectuate a furniture delivery, she gave prior express consent to receive a pre-delivery call and a post-delivery survey call).  Plaintiff contended that *Blow* supported his position as it held: "providing one's phone number does not constitute carte blanche consent to receive automated marketing messages of any kind".  *Id*. at \*26-27.  Thus, "the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554, \*11 (N.D. Ill. 2014).

The parties also disagree as to whether a contested class can be certified as XPO argues that individual issues would make any class unmanageable. Despite these disagreements, the parties reached this settlement after several years of hard-fought litigation and several robust mediations.

On October 19, 2017, the Court granted preliminary approval of the Settlement. Dkt. No. 142. Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated via mail to 31,783 Class Members who XPO did not have an e-mail address and via e-mail to 279,207 class embers.  *See Exhibit 2* Declaration of Andrew Perry re: Notice Procedures, ¶¶ 3-8 ("Perry Decl.").  In addition, an email reminder notice was sent to 59,927 out of 241,474 class members due to a glitch with the e-mail vendor. *Id.* at ¶12.  The remaining reminder e-mails were sent on December 29, 2017.  *Id*.

Rather than wait to see if the subsequent reminder e-mails brought the claims rate into line with Class Counsel's expectations, the parties agreed to send via mail a double postcard reminder notice to 240,074 Class Members on January 5, 2018.  *Id*. at ¶10.

Finally on January 23, 2018, a final reminder e-mail was sent to 216,716 class members who had yet to submit a claim.  *Id*.  ¶11.

2

A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website, or a toll-free phone number. To date, over 42,715 valid claims are filed by known class members for a claims rate of 13.74%. Only 26 persons have timely asked to be excluded. *Id*. at ¶21.

There are only two objections. One objection by Mr. Richman who simply objects to the existence of the settlement as he does not believe XPO should pay anything and one objection by Ms. Halsey who objected solely to the attorney fees, service award and cy pres[2]. *See* ECF 148 and *Exhibit 3*. Plaintiff respectfully submits that the lack of any substantive objections to the terms of the settlement, especially when one objector is represented by the Competitive Enterprise Institute's Center for Class Action Fairness, speaks to fact that the settlement is a great result for the class, as well as the effectiveness of the notice plan, and the ease and efficiency of the claims administration plan negotiated by Class counsel.

The overwhelmingly positive reaction from Class Members, as evidenced by a fantastic claim rate, also underscores the value the Class places on the Settlement obtained. Defendant will pay the total sum of $7.000,000 into a non-reversionary cash fund out of which claiming Class Members will be paid. Class Counsel calculates that each of the 42,715 valid claims will be paid $100.81 based on the updated administration costs of $298,321, the requested attorney fee of $2,333,334, the requested reimbursement of $52,458,90 in hard costs and the requested incentive award of $10,000.

---

[2] Plaintiff will file a separate response to Ms. Halsey's objection.

Plaintiff respectfully submits this is a great result for the Class, particularly in view of the risks and delays involved in litigating the substantive merits of these claims, and the difficulties inherent in pursuing these claims individually for the overwhelming majority of Class Members.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## II.  STATEMENT OF THE FACTS

### A.  Procedural Background

On May 1, 2015, Mr. Leung filed a Complaint in the United States District Court for the Northern District of Illinois alleging that XPO violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by making prerecorded survey calls to cell phones without the prior express consent of Leung or the putative class members.

On May 28, 2015, XPO Logistics moved to stay this action pending the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.). Dkt. 15.  On August 12, 2015, after briefing, this Court denied the motion to stay pending *Spokeo* but invited XPO Logistics to file a motion to "dismiss for lack of subject matter jurisdiction directed to Leung's allegations of actual injury." Dkt. 27.  On December 9, 2015 and after full briefing, this Court denied XPO's motion to dismiss.

After the first mediation resulted in an impasse, XPO moved to bifurcate discovery so that it could move forward with summary judgment as to the consent issue.  In doing so, it set forth its arguments on summary judgment in a 15 page memorandum with 35 pages of exhibits setting out the survey questions, its case law, and its theory of consent.  Dkt. 52.  On March 24, 2016, this Court denied XPO Logistic's motion to bifurcate.  Dkt. 55.

4

**B.**     **Discovery**

The Parties engaged in extensive discovery and attended numerous status hearings with the focus on discovery. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. In addition, Plaintiff filed motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105 (Amazon), 123 (Lowes), and 125 (Home Depot).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsel. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims.[3]

**C.**     **The Parties' Mediation**

The parties initially mediated before the Honorable Wayne Andersen ("Judge Andersen") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on March 16, 2016, and again on May 23, 2016. A third private mediation was held before the Honorable James Holderman ("Judge Holderman") of JAMS on June 23, 2017, as well as follow-up in person meetings and negotiations between Counsel and officers of XPO before reaching a resolution in principle on August 25, 2017. Prior to each mediation, the parties submitted detailed mediation briefs to the mediators setting forth their respective views on the strengths of their cases.[4] At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[5]

---

[3] *See* Supplemental Declaration of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 4, ¶ 2.
[4] *Id.*
[5] *Id.*

5

Counsel exchanged counterproposals on key aspects of the Settlement. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[6]

### D.    The Proposed Settlement

The Settlement's details are contained in the Agreement signed by the parties, a copy of which was attached as Exhibit 1 to the motion for Preliminary Approval and again here as *Exhibit 1*. The following summarizes the Agreement's terms:

### 1.    The  Settlement Class

The Settlement Class is defined as follows:

> The parties whose cellular telephone numbers are identified in the call data produced in this litigation bearing the litigation production numbers XPOLG024550 and XPOLG024553 where XPO or its subsidiary placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery.

Agreement § 2.25.[7]

### 2.    Monetary Relief for  Settlement Class Members

The Settlement requires XPO to create a non-reversionary Settlement Fund of $7,000,000. Agreement §2.30. Out of this Fund, Settlement Class Members who file a valid claim will receive a Settlement Award in the form of a cash payment. *Id.* § 2.28. The amount of each Settlement Class Member's Award will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id.* §§ 11. No amount of the Settlement Fund will revert to Defendant. *Id.*

Class Counsel's estimated a ten percent claim rate based on the robust notice plan. *See*

---

[6] *Id.* ¶ 5.

[7] Excluded from the Settlement Class are the Judge to whom the Action is assigned and any member of the Court's staff and immediate family (to the extent they received a listed call) and all persons who have opted-out of the Settlement Class pursuant to the requirements set forth in Section 13.1 of this Agreement. *Id.*

6

ECF 139 p. 11 (preliminary approval motion estimating 10% claim rate based on robust notice plan). Yet the actual claim rate of 13.74% exceeded that estimation[8], which illustrates that the class benefitted from the robust notice. Even the sole objector acknowledges that she did not see the e-mail notice but received the reminder post card notice.

As noted above, Class Counsel calculates that each of the 42,715 valid claims will be paid $100.81 based on the updated administration costs of $298,321, the requested attorney fee of $2,333,334, the requested reimbursement of $52,458,90 in hard costs and the requested incentive award of $10,000. Checks will be valid for 120 days from the date of the check. *Id.* § 12.1. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who did not fail to cash his or her initial Settlement Award check, such remaining monies will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* §12.2.

### 3. *Cy Pres* **Distributions**

Only if a Second Distribution is not feasible or if there remains money after the Second Distribution will the money be donated to a *cy pres*. The parties have selected any such funds be sent to the National Consumer Law Center earmarked for working to safeguard the protections of

---

[8] Claims rates in TCPA class actions are often 2-4%. *Compare Bayat v. Bank of the West,* No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.,* No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.,* No. C10–0198 JLR, Docket No. 249 at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp.*, P.C., No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

the TCPA. *Id*. §12.3. The class notice identified this organization and only Ms. Halsey objected to it.

Ms. Halsey's initial objection to cy pres was that if fewer than 9,000 valid claims were received, a significant portion of the fund would go to *cy pre*s. ECF 148 p 16. This concern is unfounded as there are over 42,000 valid claims. As such, it is clear that any cy pres will be nominal.

Ms. Halsey next objects to the choice of the National Consumer Law Center ("NCLC"), but fails to refute it is the best choice for any nominal cy pres money after the first and possible second distribution. Instead, Ms. Halsey claims without support that Class Counsel has ties to its Partnership Counsel and has spoken at NCLC's annual conferences. *Id*. at 16-17. However, it does not cite any case that authority that knowing some of the firms on NCLC's Partners counsel is relevant. Putting aside that these firms are Class Counsel's competitors for cases, the Partners Counsel is an informal volunteer group who do not direct NCLC as objector implies. Instead, "[t]he Partners Council is an informal group that works with the National Consumer Law Center to ensure that NCLC has the revenue and resources to advance its work in support of economic fairness, equity, and consumer protection of low-income individuals and families. NCLC has a separate governing board of directors." https://www.nclc.org/about-us/leadership.html.

Likewise, there is nothing nefarious surrounding the fact that Class Counsel has spoken at NCLC conferences. Class Counsel listed these lecture in his declaration filed in support of preliminary approval, as well as in his declaration filed in support of attorney fees and costs. *See* ECF139-2, p. 10 at ¶24 and ECF 144-1 p. 12 at ¶33 ("Presented at the National Consumer Law Center 2016 and 2017 annual conferences on the TCPA.") Class Counsel does not get a penny from NCLC or anybody else for speaking at conferences (or anything else) and must pay his own

travel, lodging and must even pay for the tuition for the conferences Class Counsel speaks at. *See Exhibit 4* at ¶11. There are no improper ties with NCLC, let alone any that would negate the fact that NCLC is the best choice for any cy pres in this case.

The Seventh Circuit has required that any potential cy pres be closely aligned with the Class' interest. For instance, in *Ira Holtzman, C.P.A., & Assocs. v. Turza*, it rejected the Legal Assistance Foundation of Metropolitan Chicago, which it acknowledged a worthy organization, as a cy pres recipient in a TCPA case because it was not closely related to the class interests in a TCPA class action. *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689 (7th Cir. 2013) ("Money not claimed by class members should be used for the class's benefit to the extent that is feasible.") As such, courts have determined that cy pres awards to NCLC are appropriate in TCPA actions where funds are earmarked for TCPA purposes, as they are here. *See Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017)(TCPA); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)(TCPA); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016). In fact, one would be hard pressed to find another organization so closely aligned to the class interests to be protected by the TCPA.

For example, NCLC has commented to the FCC on almost every major, and many minor, proceedings, rulemakings and requests for exemptions under the TCPA that have come up since late 2014 with the FCC[9]. *See Exhibt 5* (letter from NCLC). NCLC authors the comments and have

---

[9] NCLC's website on robocalls sets out these filings. https://www.nclc.org/issues/robocalls-and-telemarketing.html

other national, and often many state, consumer advocates sign on. It is widely seen as the leading consumer voice and the expert on TCPA matters pending before both the FCC and Congress. *Id*.

 NCLC staff meet regularly, almost bi-monthly, with staff of the former and current FCC Chairman's office, as well as staff of other Commissioners' office, and staff of the Consumer and Governmental Affairs Bureau.  *Id*.  Many of these filings are simple ex partes meeting summaries, but many single filings also reflect multiple meetings held on one day.

In addition, NCLC wrote the amicus to the DC Circuit Court on behalf on behalf of several of the national consumer groups defending the 2015 Omnibus Order (which NCLC was largely instrumental in effecting -- as can be seen from a search of that order for either NCLC staff member Margot Saunders or NCLC's name.  *Id*.  NCLC staff has also testified in the Senate defending the TCPA last time the issue was before it.  *Id*.

In short, to the extent there is any nominal money going to cy pres after a potential second distribution, NCLC with the money earmarked is the best choice.

### 4.    Settlement Class Release

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case.  Specifically, they will release all claims that "arise out of or relate in any way to the Released Parties' contact or attempt to contact Settlement Class Members by placing pre-recorded or auto-dialed calls to Class Plaintiff and the Settlement Class Members' cellular phones with a pre-recorded survey, that was or could have been challenged in this Action, to the fullest extent that those terms are used, defined or interpreted by the TCPA or any other similar statute, relevant regulatory or administrative promulgations and case law, including, but not limited to, claims under or for a violation of the TCPA and any other statutory or common law claim arising under the TCPA as

relative to pre-recorded or auto-dialed calls placed to cellular telephones" *Id.* § 17.3; Doc. 143 at p. 2 (amended release).

### 5.     **Class Representative Service Award**

The Settlement Agreement provides that Plaintiff may petition the Court for a service award.  There is no clear sailing provision as to this request.  The Service Award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the Service Award is a condition of the Settlement.  *Id.*  Since Plaintiff has fully participated in this case, including being deposed, Plaintiff has requested an incentive award of $10,000.00.  The Class Notice specifically advised the Settlement Class of Plaintiff's request.  *See Exhibit 2* at Exhibit C, E and G.  Plaintiff will address the objection to the service award separately.

### 6.     **Attorneys' Fees and Costs**

Class Counsel filed a motion for attorney fees and costs on December 1, 2017, which was subsequently posted on the settlement website.  ECF 144.  Like the class representative service award, there is no clear sailing provision as to attorney fees or costs.

Class Counsel sought an award of attorneys' fees of $2,333,334 which represented one-third of the total settlement fund, plus $52,458.90 of counsel's out-of-pocket costs.  The class notice specifically advised the Settlement Class of this request.  *See Exhibit 2* at Exhibit C, E and G.   As set forth in Plaintiff's response to the sole objection regarding fees, the fees sought are reasonable, consistent with Seventh Circuit authority, and consistent with the market.

### 7.     **Administration and Notice**

All costs of notice and claims administration were advanced by XPO Logistics and credited against the Settlement Fund.  Pursuant to the Preliminary Order, the Claims Administrator is Kurtzman Carson Consultants ("KCC").  Per the Court-approved notice plan,

11

KCC established the settlement website on December 1, 2017 at  www.xpotcpasettlement.com and caused an interactive voice response telephone system to be established to provide information about the settlement, as well as allow for submission of claims.  See Exhibit 2 at ¶14-15.

KCC sent direct individual notice of the Settlement via mail to 31,783 Class Members for whom XPO did not have an e-mail address, and via e-mail to 279,207 class embers.  *See Exhibit 2* Declaration of Andrew Perry re: Notice Procedures, ¶¶ 3-8 ("Perry Decl.").  In addition, an email reminder notice was sent to 59,927 out of 241,474 class members due to a glitch with the e-mail vendor. *Id.* at ¶12.  The remaining reminder e-mails were sent on December 29, 2017.  *Id.*

KCC then sent via mail a double postcard reminder notice to 240,074 Class Members on January 5, 2018.  *Id*. at ¶10.

Finally on January 23, 2018, a final reminder e-mail was sent to 216,716 class members who had yet to submit a claim.  *Id*.  ¶11.

A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, an internet website, or a toll-free phone number.  To date, over 42,715 valid claims are filed by known class members for a claims rate of 13.74%.  Only 26 persons have timely asked to be excluded.  *Id*. at ¶21.

III.    **ARGUMENT**

    A.    **The Settlement Approval Process**

Under Fed. R. Civ. P. 23(e)(2), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved

are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here— individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

13

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

The first two steps in this process have occurred. With this motion, Plaintiff respectfully requests that the Court take the third and final step in granting final approval.

**B.** **The Settlement is Fair, Reasonable, Adequate, and Should be Approved**

A proposed class action settlement should be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, reasonable and adequate at the final approval stage, courts in this Circuit consider the following factors:

(1) the strength of plaintiff's case compared to the terms of the proposed settlement;

(2) the likely complexity, length, and expense of continued litigation;

(3) the amount of opposition to settlement among affected parties;

(4) the opinion of competent counsel; and

(5) the stage of the proceedings and the amount of discovery completed.

14

*Isby*, 75 F.3d at 1199.  In reviewing these factors, courts view the facts "in a light most favorable to the settlement."  *Isby*, 75 F.3d at 1199.  In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Armstrong*, 616 F.2d at 315).

### 1.  The Monetary Amount Offered in Settlement

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted).  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

The $7,000,000 Settlement Fund amounts to $22.50 per the 311, 013 class member on a gross basis.  This figure significantly exceeds similar TCPA class action settlements that courts have recently approved in this district alone. *See, e.g., Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566  (N.D. Ill. Feb. 27, 2015) ($4.41 per class member); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($4.31 per class member); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($1.20 per class member); *Wright v Nationstar*. 14 C 10457 (N.D. Ill. August 29, 2016) ($12.1 million fund for 3,160,291 class members amounting to $3.83 per class member); *Allen v Chase*, 13-cv-08285 (N.D. Ill. November 30, 2015)($10,200,000 fund for 2,087,559 class members amounting to $4.89 per class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 237 (N.D. Ill. 2016)($34 million fund for more than 32 million class

members plus no recovery for fourteen million members of the Alert Call Subclass).[10] Likewise the $100.81 amount per valid claim also exceeds the amounts per claim in many other TCPA settlements. e.g. *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each claimant would be awarded $39.66) (Holderman, J.); and *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant)

Class Counsel acknowledges that the $7,000,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact, however, should not weigh against final approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

Moreover, the Agreement provides the Settlement Class Members with substantial monetary relief, despite the fact that this is a purely statutory damages case in which Class Members incurred small economic damages or whose actual damages (such as to the invasion of their privacy) are difficult or impossible to quantify. For all of the above reasons, the monetary amount recovered through the Settlement is a great result for the class.

---

[10] *See, e.g., Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.,* No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.,* No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

## 2. The Strength of Plaintiff's Case

Plaintiff continues to believe that his claims against Defendant have merit and that he would make a compelling case if his claims were tried. Nevertheless, Plaintiff and the Settlement Class would face a number of difficult challenges carrying the potential to result in diminished relief for the Class, or no relief at all.

For example, the parties disagreed whether there was consent for these calls. XPO Logistics' contended under applicable FCC guidance and governing case law, the context and purpose of XPO's calls fall within the boundaries of the scope of the customers' consent given for calls made in connection with the deliveries. E.g., *Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017); *Lamont v. Furniture N*., LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) (holding that when plaintiff provided her phone number at the point of sale to effectuate a furniture delivery, she gave prior express consent to receive a pre-delivery call and a post-delivery survey call). Plaintiff contended that *Blow* supported his position as it held: "providing one's phone number does not constitute carte blanche consent to receive automated marketing messages of any kind". *Id*. at *26-27. Thus, "the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes." *Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554, *11 (N.D. Ill. 2014).

The parties also disagree as to whether a class can be certified. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case." *Chapman v. First Index, Inc*., No. 09 C 5555, 2014 U.S. Dist. LEXIS 27556, at *6-7 (N.D. Ill. March 4, 2014) (citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.,* No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *49 (N.D. Ill. Jan. 4, 2013), the court granted class

17

certification and rejected the defendant's argument that questions of consent caused individual issues to predominate, noting that the defendant had not offered evidence tending to show that any particular class member consented to the faxes at issue, whereas in *G.M. Sign, Inc. v. Brinks Manufacturing Company*, No. 09 C 5528, 2011 U.S. Dist. LEXIS 7084, at *7-10 (N.D. Ill. March 4, 2014), the court declined to certify a class, finding that the defendant offered evidence illustrating that consent could not be shown with common proof.

In addition, even when a court certifies a TCPA class, there is a risk that the Court would decertify it. This is not a hypothetical risk as it has recently happened to Class Counsel in *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) where that court decertified a TCPA class after notice was sent to over 360,000 class members where plaintiffs' counsels are responsible for the notice costs.

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

18

Finally, there remains a risk of losing a jury trial.  And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal.

Given these significant hurdles as compared against the settlement amount and comparable TCPA settlements described above that were granted final approval, this  factor weighs in favor of final approval.

### 3.  Continued Litigation is Likely to be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed.  Although the parties engaged in significant discovery efforts, including expert discovery, continued litigation would involve extensive motion practice, including Plaintiff's motion for class certification and possible motions for summary judgment by defendant.   Any judgment in favor of the Settlement Class Members could be further delayed by the appeal process.  Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). This factor weighs in favor of final approval.

### 4.  The Class Response Is Positive

The Settlement Class Members' response to the Settlement has been overwhelmingly positive.  Only 26 persons excluded themselves and no class member has objected to the amount of the settlement, the release or the notice plan.  Instead, there are only two objections where one is a philosophical objection to the settlement existing at all and the other objection is solely to the

attorney fees, service award and choice of cy pres. These two[11] objections amount to .00064% of the class. This factor therefore favors final approval. *See, e.g., Isby* 75 F.3d at 1200 (affirming final approval of settlement where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 5. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[12] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in similar TCPA class action cases)[13]; (2) Class Counsel litigated this case for several years, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[14]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel, after three robust mediation sessions before two experienced mediator and former Judge Andersen (Ret.) and Judge Holderman (Ret.).[15] *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final

---

[11]    In a settlement of this magnitude, the Court should expect to receive around 32 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529, 1550 (2004)

[12] *See* Dkt. No. 352, *Keogh Decl.* ¶ 9, *Hutchison Decl.* ¶ 2, *Burke Decl.* ¶ 10, *Wilson Decl.* ¶ 7.

[13] *Keogh Decl.* ¶¶ 15-25, *Hutchison Decl.* ¶¶ 6-7, *Burke Decl.* ¶¶ 3-6, *Wilson Decl.* ¶ 3.

[14] *Keogh Decl.* ¶¶ 2-5.

[15] *Id.* ¶¶ 3-4.

approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of final approval.

### 6. The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval

The Settlement was reached after almost three years of litigation. As shown above, the parties litigated article III standing, consent issues, and conducted several mediations.

Similarly, discovery has been contentious and robust. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. Class Counsel obtained comprehensive records of the survey calls in discovery, showing the dates of the calls, the telephone numbers dialed, as well as the name and address of the person called. Plaintiff's expert analyzed these records and identified the unique telephone numbers that were assigned to cellular telephone service at the time of the survey calls by cross referencing the numbers against cellular number databases that determines the number was a cellular telephone at the time of the call. Plaintiff also deposed XPO's expert, conducted three separate Rule 30b(6) depositions, as well as depositions of individual XPO employees. These depositions took place across the country. In addition, Class Counsel filed motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105, 123, and 125.

At the time of the settlement, Class Counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate.[16] Accordingly, the final terms of Settlement were agreed to only after Class Counsel thoroughly vetted the claims and potential damages through the

---

[16] *See* Dkt. No. 352, *Keogh Decl.* ¶ 9.

exchange of both informal and formal discovery and participated in lengthy arm's length negotiations. This factor also weighs in favor of the final approval.

As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

## IV.    **<u>CONCLUSION</u>**

This Settlement provides substantial benefits for all Settlement Class Members, it was negotiated at arm's length by experienced counsel after three separate mediations, extensive discovery and litigation, it easily falls within the range of possible approval, and there are no objections to the terms of the settlement other than the sole objection to attorney fees, service award and choice of cy pres. Plaintiff will file a separate response to this objection. Thus, the Settlement is fair, reasonable and adequate, and Plaintiff respectfully requests that this Court enter an order granting final approval. The draft order for Final Approval attached to the Settlement Agreement is attached hereto as *Exhibit 6.*


Dated: February 20, 2018

Respectfully Submitted,

By:   *s/ Keith J. Keogh*

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
Timothy Sostrin
Email: Tsostrin@Keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312.726.1092
Fax: 312.726.1093

*Attorneys for Plaintiff and the Proposed Class*