# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VINCENT LEUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XPO LOGISTICS, INC.,<br>Defendant. | No. 15 CV 03877<br><br>Judge Edmond E. Chang |

**SUPPLEMENTAL DECLARATION OF KEITH J. KEOGH**

Keith J. Keogh declares under penalty of perjury, that the following statements are true:

1. I am over the age of eighteen and I am fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify to the matters stated herein, I could and would do so competently.

2. The litigation was robust and involved novel legal issues that were shifting as a result of both cases before the Supreme Court and matters in front of the FCC.

3. The parties engaged in formal discovery relating to the class. Although this litigation was not overly contentious, Plaintiff repeatedly needed Court assistance to obtain discovery from both Defendant and Third Parties as evidenced by the motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105 (Amazon), Dkt. 123 (Lowes), and Dkt. 125 (Home Depot).

4. As part of the discovery process, Class Counsel obtained comprehensive records of the survey calls in discovery, showing the dates of the calls, the telephone numbers dialed, as well as the name and address of the person called. Plaintiff's expert analyzed these records and identified the unique telephone numbers that were assigned to cellular telephone service at the

- 2 -

time of the survey calls by cross referencing the numbers against cellular number databases that determines the number was a cellular telephone at the time of the call. Plaintiff also deposed XPO's expert, three separate Rule 30b(6) depositions as well as individual XPO employees. These depositions took place across the country.

5. As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

6. Throughout this process the parties engaged in extensive arms-length settlement negotiations with the hope of resolving the Litigation. The parties mediated before the Honorable Wayne Andersen ("Judge Andersen") of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on March 16, 2016, and again on May 23, 2016. A third private mediation was held before the Honorable James Holderman ("Judge Holderman") of JAMS on June 23, 2017, as well as follow-up in person meetings and negotiations between myself and officers of XPO before reaching a resolution in principle on August 25, 2017. Prior to each mediation, the parties submitted detailed mediation briefs to the mediators setting forth their respective views on the strengths of their cases. At mediation, the parties discussed their relative views of the law and the facts and potential relief for the proposed Class.[1]

7. I am confident in the strength of the claims alleged in this action and that Plaintiff would ultimately prevail at trial. Notwithstanding the foregoing, litigation is inherently unpredictable, and the outcome of a trial is never guaranteed. Thus, I concede that Plaintiff would face significant risk in taking this case to trial.

8. Some examples of the risks of this case is that there is the possibility that the Court would grant the motion to dismiss or the Court would deny class certification, or that the

---

[1] *Id.*

- 2 -

- 3 -

result at trial would weigh in Defendants' favor. *See e.g. Warnick v. Dish Network, LLC,* 304 F.R.D. 303 (D. Colo. 2014) (denying class certification in a TCPA case); *see also Jamison v. First Credit Services, Inc.,* 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. 2013) (denying class certification in a TCPA case).

9. An additional risk is that even after certification, the class can be decertified. For example, in *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) the court decertified a TCPA class after notice was sent to over 360,000 class members where plaintiff's counsels are responsible for the notice costs.

10. The Settlement factored in the above risks based and counsels extensive experience in TCPA class actions.

11. I do not get a penny from NCLC or anybody else for speaking at NCLC conferences (or anything else). Further, I must pay my own travel, lodging and must even pay for the tuition for the conferences I speak at.

Executed at Chicago, Illinois, on February 20, 2018.

_____
Keith J. Keogh