# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VINCENT LEUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>XPO LOGISTICS, INC.,<br>Defendant. | No. 15 CV 03877<br><br>Judge Edmond E. Chang |

**RESPONSE TO MS. HALSEY'S OBJECTION [148] AS TO ATTORNEYS' FEES AND SERVICE AWARD**

**I.     INTRODUCTION**

On October 19, 2017, this Court preliminarily approved a proposed class action settlement between Plaintiff Vincent Leung and Defendant XPO Logistics, Inc. ("XPO"). This Settlement creates a $7,000,000, non-reversionary common fund for the benefit of 311,013 consumers for whom XPO placed a pre-recorded post-delivery survey call after May 1, 2011 relating to an IKEA delivery in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Class Counsel zealously prosecuted Plaintiff's claims for over two and half years, achieving the settlement only after extensive first and third-party discovery; contested motion practice, and over a year of arms-length negotiations that involved three mediations at JAMS with two different mediators and additional negotiations.

The e-mail and mailed class notice advised the class that Class Counsel would seek up to $2,333,334 which represented one-third of the total settlement fund, plus $52,458.90 of counsel's out-of-pocket costs. The notice also explicitly stated Plaintiff would seek up to $10,000 as an incentive award. The fee motion was also posted to the settlement website.

1

Despite explicitly advising the class of both the amounts sought for fees and the corresponding percentage as well as the amount of the incentive award, only one class member objected to these requests. *See* ECF 148.

In making the objection on behalf of Ms. Halsey, the Competitive Enterprise Institute's Center for Class Action Fairness, misstates the law, cites cases out of context, and ignores the holdings of the cases they cite.

Further, Plaintiff objects to the inclusion of the report of M. Todd Henderson. See ECF 148-5. Mr. Henderson's report 1) is hearsay as it is an out of court statement produced (and rejected by the court) in *In Re Capital One*; 2) does not comply with Rule 26(a)(2); 3) it conflicts with Seventh Circuit law as it limits fees only to loadstar; and 3) is irrelevant as it is based on the per class member results in Capital One, which are not present here.

For the reasons set forth in Plaintiff's motion for attorney fees, costs and service award [ECF 144] as well as those set forth in Plaintiff's motion for final approval of the class action settlement[1], Mrs. Halsey's objections should be overruled.

## I.     <u>LEGAL STANDARD FOR ATTORNEYS' FEE DECISIONS</u>

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole").

As an initial matter, the Seventh Circuit's opinion in *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) conflict with

---

[1] Plaintiff addresses Ms. Haley's objection to cy pres in her final approval memorandum. ECF 149 p 12-13.

Supreme Court precedent in *Boeing* to the extent they exclude administration costs from the "fund as a whole" in determining attorney fees. The Seventh Circuit is also mistaken that class notice does not benefit the class members as 1) this case is a perfect illustration on how notice and the related costs for such, benefits the class members and 2) costs of postage and printing are traditional costs borne by clients and consistent with the ex-ante market rate required by the Seventh Circuit.

At the same time, *Pearson* explains why it distinguished *Boeing* as *Pearson* was a claim made settlement that only paid claims made. The Seventh Circuit held: "There is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did." *Pearson* at 782. So like *Redman,* which was a coupon settlement, it made sense[2] to exclude administration costs to prevent artificial inflation of the value of the settlement. Yet this case there is a common fund and not a single penny will revert back to Defendant. In any event, *Boeing* requires fees to be calculated from the fund as a whole and *Pearson* does not preclude such a holding.

Ms. Halsey attempts to bolster her position by arguing "There is good reason to deduct costs before setting the fee award. 'If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses.' *In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 471 (N.D. Cal. 1994)." Putting aside the fact that *In re Wells Fargo Secs. Litig.* did not exclude administration costs and the Ninth Circuit awards fees from the gross fund and does not deduct administration costs, the premise is flawed as it creates a perverse incentive to lower administration costs at the expense of robust notice.

---

[2] Other Circuits have explicitly rejected such a reading of *Boeing* and require fees to be paid from the whole value of the settlement even if reversionary. E.g. *Poertner v. Gillette Co.*, 618 Fed. Appx. 624 (11th Cir. Jul. 16, 2015)

3

Plaintiff recognizes that this Court is bound by *Redman* and *Pearson*, but both are distinguishable. Regardless, the fees and service award sought are consistent with both as explained below.

### A. <u>The Award Sought is Not Disproportionate</u>

As an initial matter, the settlement costs have increased to $298,321 as a result of the supplemental postcard notice. ECF 149-2 p.7 (Declaration of class administrator). As such, the net fund after administration costs, class counsel's $52,458.90 in out-of-pocket expenses, and the requested $10,000 incentive award, equals $6,639,220.10. The $2,333,334 fee requested equals one third of the gross common fund or 35.1% of the net fund.

Ms. Halsey makes the assertion that "Seventh Circuit law is clear: one third should be regarded as a ceiling absent exceptional circumstances,…" See ECF 148 p. 3. Yet not a single case remotely holds such. Instead, *Pearson* held that even in claims made (non-common fund) cases with low claim rates, the fee should not exceed half. The Court held:

> But especially in consumer class actions, where the percentage of class members who file claims is often quite low (in this case it was 30,245 ö 12 million = .0025, or one quarter of one percent), see, e.g., Daniel Fisher, "Odds of a Payoff in Consumer Class Action? Less Than a Straight Flush," Forbes, May 8, 2014, www.forbes.com/sites/danielfisher/2014/05/08/odds-of-a-payoff-in-consumer-class-action-less-than-a-straight-flush/, the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.

*Id*. at 782. So to the extent there is a ceiling, it is half the fund and not one third.

### B. <u>The Court Should Calculate Fees as a Percentage of the Fund And There is No Loadstar Cross Check Required</u>

Although the Court has discretion, it should use the percentage of the fund approach to determine fees in this case especially as the TCPA is not fee shifting. *Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169, at *15 (N.D. Ill. Aug. 29, 2016); *In re Capital One*

*Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

As set forth in plaintiff's fee motion, one of the advantages that the percentage of the fund method has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015)(Discussing fee award in TCPA class action). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

Finally as to this point, class counsel has not submitted his loadstar as it is not required in this district and the Seventh Circuit has never required a loadstar cross check. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d at 629, 636 (7th Cir. 2011).

### C.     Counsel's Request Is Within the Market Rate

Ms. Halsey argues that the most comprehensive look at fees in TCPA cases occurred in *Capital One*, but fails to address Plaintiff's argument set out in his fee motion that applying that analysis to this case is flawed because it did not account for the deduction of administration expenses. For example, a 30% fee on a $10 million settlement that had $1 million in administration costs is three million dollars. That same fee equals 33.333% on the same settlement minus

administration expenses. So comparing apples to apples would mean that fee would need to be adjusted to 33% before determining the average percentage. Yet by arguing that the fee should be 30% of the fund minus expenses, Ms. Halsey is artificially suppressing the market rate as the fee would now be reduced to $2,700,000. This is like comparing apples and oranges.

At the same time, Ms. Halsey concedes that 25 of the 72 cases examined in *Capital One* were from the Ninth Circuit where the benchmark for attorney fees is 25%. See ECF 148-9. Thus, the percentages were skewed downward even before adjusting for net expenses as a 25% benchmark is in conflict with Seventh Circuit precedent that does not have such a benchmark. Further, the Court in *Capital One* acknowledged it lacked the expertise and its sample was small. Specifically, the court held:

> Because this court lacks the technical expertise of Eisenberg, Miller, or Fitzpatrick, and because the sample size of cases (72) is quite small, the statistics set forth above are but an informal analysis.

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 800 (N.D. Ill. 2015).

As such, *Capital One* does not support the argument that the market for fees in TCPA class actions are 30% let alone 25[3]% net administration costs. Along this line, this Court in *Wright* agreed "with the Plaintiffs that 'the baseline rate in TCPA common fund cases is 30%' of the first $10 million of recovery. Pls.' Fee Br. at 12." *Wright v. Nationstar Mortgage LLC*, No. 14-cv-10457, 2016 WL 4505169, at *15 (N.D. Ill. Aug. 29, 2016). Yet those Plaintiffs were incorrect because they did not increase the percentages to adjust for administration expenses, did not adjust for the fact that over a third of the cases in *Capital One* were from the Ninth Circuit, and did not include in their baseline cases post-*Capital One* or post-*Pearson.*

---

[3] Ms. Halsey argues on one hand that Capital One was the most comprehensive study of TCPA class actions, but at the same time, she ignores the holding of Capital One that the base line for attorney fees for the first $10 million dollars is 30%.

6

In addition to the dozens of post-*Pearson* examples listed in the fee motion, the following courts awarded one third of the gross common fund in this district post-*Person*. *Ossola v Amex* 1:13-cv-04836 (N.D. Ill. 2016)(TCPA telemarketing class settlement awarding 33% of gross $8,250,000 common fund plus expenses or 35.53% of fund minus administration costs); *Ossola v West* 1:13-cv-04836 (N.D. Ill. 2016)(TCPA debt collection settlement)(33% of gross $1 million common fund or 34.9% minus administration costs). Courts outside this district have awarded 30% or 33% gross of the common fund, including in the Ninth Circuit. *See Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al*, 15-CV-02419-PGS-LHG (D. NJ. 2018)(TCPA)(33% of gross $2.5mm common fund plus expenses); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS (D.NM 10/24/16)(TCPA) (33% of gross common fund plus expenses); *Legg v AEO*, 14-cv-02440-VEC (S.D. NY 2017)(TCPA)(30% of gross $14.5mm fund plus expenses)(on appeal after final approval from professional objector); *Joseph et al. v. TrueBlue, Inc. et al.*, Case No. 3:14-cv-05963 (D. Wa.) (30% of gross $5 million common fund plus expenses in the Ninth Circuit where benchmark is 25%); *In re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn. November 10, 2016)) (TCPA)(33% of gross $5.5 million common fund)[4]. As such, the baseline remains 33% of the gross common fund for settlements $10 million dollars and below.

---

[4] Non TCPA consumer class actions are similar. *See Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla., filed July 6, 2014) (33% of gross $11 million common fund); *Legg v. Spirit Airlines, Inc*., No. 14-cv-61978-JIC (S.D. Fla., filed Aug. 29, 2014) (33% of gross $7.5 million common fund plus expenses) and *Muransky v. Godiva Chocolatier, Inc*., 15-cv-60716-WPD (S.D. Fla., filed Apr. 6, 2015) (33% of gross $6.3 million common fund dollars plus expenses)(on appeal by professional objector).

Similarly, there is no support that this district is trending to awarding lower percentages. The primary case that the objector relies on is *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 237 (N.D. Ill. 2016). Yet that case was a $34 million settlement for more than 32 million class members plus no recovery for fourteen million members of the Alert Call Subclass. The notice in that case was haphazardly done, where "[p]rior to the final approval hearing, the parties realized that Chase possessed the records of approximately 7.1 million additional class members, and the hearing was postponed while Class Counsel provided notice to those individuals." *Id.* at 222. Not surprisingly the court in *Gehrich* was critical of those attorneys failure to reduce their fee for the additional cost to send 7.1 million notices. In contrast, the notice in this case was robust and the additional costs to send postcard notice was a foreseen possibility that would be triggered to benefit the class. Further, although the percentage of the net fund increased slightly from 34.3% to 35.1%, the amount sought is the same dollar amount the class was explicitly advised Class Counsel would seek and only Ms. Halsey has complained. Further, Ms. Halsey cannot really dispute the benefit of this additional notice to her or the class as she asserts that she only received the supplemental notice and without it, she was unaware she even had a claim against XPO and cannot even recall the survey call at issue.

### D.  **Plaintiff's Fee Agreement Is Relevant**

Ms. Halsey asserts that "[t]hus, unlike the sophisticated plaintiffs in *Synthroid I*, the plaintiffs 'did not have 'a sufficient stake to drive a hard— or any—bargain with the lawyer.' *Capital One*, 80 F. Supp. 3d at 796 (quoting In re Continental Ill. Sec. Litig., 962 F.2d at 572)." However, Mr. Leung is an Illinois attorney licensed since 2004, has the sophistication to bargain with his lawyer and he agreed to a one third fee.

Regardless, the Seventh Circuit still looks to the "actual fee contracts that were negotiated

8

for private litigation" when analyzing the market price for legal services. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005); *see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

### E. This Case Was an All or Nothing Case And Much Riskier Than Many Other TCPA Cases

*Capital One* found that an application of modified *Synthroid II* structure provided a 30% fee for the first ten million (once again these cases were 30% of the gross fund). *Id*. at 805. Subsequently that court determined this fee should be increased by 6% to adjust of the risk of loss. *Id*. at 807. Plaintiff recognizes that traditionally adjustments to risk of loss have been in the context of a multiplier to a loadstar. *See e.g. Wright v. Nationstar Mortage LLC*, No. 14-cv-10457, 2016 WL 4505169, at *15 (N.D. Ill. Aug. 29, 2016). However, because numerous courts post-*Pearson* have awarded one third of the gross TCPA settlement and additional courts have awarded 36% net expenses in TCPA class actions (e.g. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) and *Capital One*) that did less work and were less risky, the 36% net expenses is not so much a multiplier but instead is the market rate. Indeed, in many cases the fee percentage would need to be adjusted upwards to control for the fact that those cases awarded fees on the entire settlement. In other words, Plaintiff is not seeking a loadstar multiplier but is simply seeking a fee that is consistent with the market.

Alternatively, in distinguishing cases that awarded 36% of the first $10 million, this Court held:

Here, in contrast, although the Court explained that the Plaintiffs faced risks from the consent and autodialer issues, the quantum of the risks in this case are typical of a run-of-the-mill TCPA action against debt collectors. The size of the class, number of issues, and relatively short length of litigation before settlement are typical of a standard TCPA case. So the 30% baseline appropriately reflects the market rate in this case, and no adjustment is justified, especially not one that increases the fee award by 20%. Thus, the Court reduces the attorneys' fees from 36% to 30% of the net settlement fund.

*Wright v. Nationstar Mortage LLC*, No. 14-cv-10457, 2016 WL 4505169, at *15 (N.D. Ill. Aug. 29, 2016).

Unlike in *Wright*, where Nationstar may have been able to argue a consent defense may have applied to some of the plaintiffs, this case was riskier as XPO's consent defense applied to plaintiff and every class member thereby making this case truly an all or nothing proposition such that an adverse ruling would not just narrow the class, but end it.

For example, XPO Logistics' contended under applicable FCC guidance and governing case law, the context and purpose of XPO's calls fall within the boundaries of the scope of the customers' consent given for calls made in connection with the deliveries. E.g., *Blow v. Bijora*, 855 F.3d 793 (7th Cir. 2017); *Lamont v. Furniture N.*, LLC, 2014 WL 1453750 (D.N.H. Apr. 15, 2014) (holding that when plaintiff provided her phone number at the point of sale to effectuate a furniture delivery, she gave prior express consent to receive a pre-delivery call and a post-delivery survey call).

Along these lines, even if Plaintiff prevailed as to the threshold consent issue, XPO has argued that additional individual consent defenses would make the class unmanageable. This is a substantial risk as evidenced by the recent opinion in *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) where that court decertified a TCPA class based on similar individual issues after notice was sent by class counsel to over 360,000 class members where plaintiffs' counsels are responsible for the notice costs.

Further, *Wright* settled after just two months of discovery, which does not appear to include depositions or contested motion practice. Here the Parties engaged in motion practice and extensive discovery. *See* Dkt. Nos. 64, 71, 83, 86, 101, 104, 113, 116, 121, and 132. Class Counsel deposed XPO's expert witness, three separate Rule 30b(6) corporate designees, as well as individual XPO employees. In addition, Plaintiff filed motions to compel production of discovery against both XPO (Dkt. Nos. 69 and 117) as well as against third parties. Dkt. Nos. 105 (Amazon), 123 (Lowes), and 125 (Home Depot).

Throughout the discovery process, Counsel held numerous discovery conferences with counsel related to discovery and other issues, as well as with third party counsel. The discussions were thorough and, at many points, contentious, as the parties addressed all facets of discovery as well as their respective views on class certification and of Plaintiff's class TCPA claims.[5]

Therefore, the work performed and the risk[6] undertaken in this matter justifies the requested fee and falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $$2,333,334 in attorney's fees. This request amounts to one-third of the entire $7,000,000 Settlement Fund, or 35.1% of the fund remaining after notice and administration costs[7] and the requested service award are excluded.

Finally, Plaintiff repeats his objection to the inclusion of the report of M. Todd Henderson. See ECF 148-5. Mr. Henderson's report 1) is hearsay as it is an out of court statement produced (and rejected by the court) in *In Re Capital One*; 2) does not comply with

---

[5] *See* Supplemental Declaration of Keith J. Keogh ("*Keogh Decl.*") attached as Exhibit 4, ¶ 2 to ECF 149.
[6] "The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565
[7] The percentage is based on the higher end of the projected administration costs of $197,000.

11

Rule 26(a)(2); 3) it conflicts with Seventh Circuit law as it limits fees only to loadstar; and 4) is irrelevant as it is based on the per class member results in Capital One, which are not present here.

### III. The Requested Service Award for Mr. Leung Should Be Approved.

Ms. Halsey argues that the $10,000 incentive award sought is too high and points to this Court ruling in *Wright* for support. However, *Wright* awarded $50,000 between the ten class representatives, which amounted to $5,000 each as this was the amount requested. Here, the request for $10,000 is much less than the $50,000 awarded and is in line with other cases where, as here, Plaintiff answered discovery, was deposed, and fully participated in this litigation. Mr. Leung also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman*

*v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in TCPA class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement). The requested service award of $10,000 for Plaintiff is reasonable and should be approved.

## IV. CONCLUSION

Plaintiff respectfully request that the Court overrule Ms. Haley's objection and award Plaintiff $10,000, award Class Counsel $2,333,334 which represents one-third of the total settlement fund or 35.1% of the net fund, plus $52,458.90 of counsel's out-of-pocket costs. [8]

Dated: February 20, 2018

                                                Respectfully Submitted,

                                                By: *s/ Keith J. Keogh*
                                                KEOGH LAW, LTD.
                                                Keith Keogh
                                                Email: keith@keoghlaw.com
                                                Timothy Sostrin
                                                Email: Tsostrin@Keoghlaw.com
                                                55 W. Monroe, Ste. 3390
                                                Chicago, Il. 60603
                                                Phone: 312-726-1092

                                                *Attorneys for Plaintiff and the Proposed Class*

---

[8] Finally, Ms. Halsey should be admonished for the unsupported and unfounded statements she makes in her objection. Ms. Halsey asserts that: "Halsey agrees that the last benchmark is inapplicable because counsel have apparently never bid to litigate a TCPA class action, instead colluding to jointly represent plaintiffs." While class counsel has chosen not to respond to the various unfounded ad hominem attacks, the assertion that class counsel engaged in collusion to represent plaintiff is unfounded and a violation of Rule 11. Such a serious accusations should not be thrown about without any regard for their veracity.